**Peter R. HALL, Plaintiff,**

v.

**MARITEK CORPORATION, Michael J. Geoffrey Fulton and David H. Young, Defendants.**

C.A. No. 08C–07–123 DCS

Superior Court of Delaware.

August 24, 2017

Francis J. Murphy, Esquire, for Plaintiff.

Raymond J. DiCamillo, Esquire, for Defendants.

## OPINION

Diane Clarke Streett, Judge

This 24th day of August 2017, having considered Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, Plaintiff's Response, Oral Argument, Supplemental Briefing, and the record of this case, Defendants' Motion is **GRANTED.**

It appears that:

This case arises from Peter R. Hall's (the "Plaintiff") disappointment that his plans (to develop a parcel of land that he thought he had purchased) failed to materialize after ten years of litigation against Maritek Bahamas Limited ("Maritek Bahamas") that ended in a court determination that Plaintiff did not have a valid contract. Plaintiff now blames Maritek Corporation ("Maritek") (which is the parent company of Maritek Bahamas), Michael J. Geoffrey Fulton, and David H. Young (collectively, the "Defendants") for his inability to develop the land.

During that protracted litigation, Plaintiff initiated suit in Delaware in 2008 against Defendants Fulton and Young for tortious interference with the disputed contract. Plaintiff later filed an Amended Complaint adding Maritek, a corporation with a Delaware registered agent but no office in Delaware. When the prior litigation did not end in Plaintiff's favor, Plaintiff filed this Second Amended Complaint changing the tort of interference with contract to interference with business expectancy.[1]

---

1. Plaintiff's Second Amended Complaint ("SAC"), at 123–26, Aug. 29, 2016. Plaintiff

The parcel of land that was the basis for the contractual dispute was not in Delaware or the United States. The alleged injury did not occur in Delaware and the prior contract litigation did not take place in Delaware. The corporation that owned the parcel of land was not a Delaware corporation, the parties to the contract were not Delaware residents, potential witnesses are not Delaware residents, and the two individual Defendants are not Delaware residents. The third Defendant, Maritek, is the parent corporation of the corporation that owned the parcel.

Specifically, the parcel of land (the "Bahamas Property") at the center of this dispute is in the Commonwealth of the Bahamas (the "Bahamas"). The parcel was owned by Maritek Bahamas, which was a Bahamian corporation; Plaintiff is a citizen of the United Kingdom;[2] the disputed contract (the "Hall Contract") was countersigned by a resident of Taiwan, Republic of China;[3] two of the Defendants are Canadian citizens; and the contract dispute was litigated for approximately ten years in the Supreme Court of the Common-

wealth of the Bahamas, the Court of Appeals of the Commonwealth of the Bahamas, and the Judicial Committee of the Privy Council in London (the "Privy Council").[4]

Plaintiff's Second Amended Complaint is 130 pages in length and there are 170 exhibits. Plaintiff asserts that Defendants Fulton, Young, and Maritek interfered with his business expectancy. He alleges that they breached their fiduciary duty and engaged in rogue behavior by colluding with several Bahamians (including the husband of the Bahamian judge who presided over the trial in the lower Bahamian court)[5] to thwart Plaintiff's plans to develop the parcel. Plaintiff also alleges that one of the officers lied to the Privy Council and that pivotal documents were concealed from the Privy Council's consideration.[6]

The facts of the case are that between August and November/December 2002, Plaintiff and Maritek Bahamas engaged in contract negotiations concerning the purchase of 24,682 acres or approximately 39 square miles of land (the "Bahamas Prop-

also added civil conspiracy, fraud and intentional misrepresentation, and willful and wanton conduct (punitive damages).

**2.** Plaintiff was formerly known as Peter Robert Longworth–Kraft.

**3.** Mr. Phylo Chiang was the other signatory to the Hall Contract.

**4.** In 2008, the Supreme Court of the Commonwealth of the Bahamas found that Defendant Hall was not credible and there was no contract. *Maritek Bahamas Ltd v. Peter Robert Hall*, No. 2005/CLE/gen/001198 (Bah. Sup. Dec. 15, 2008). Plaintiff appealed to the Court of Appeals of the Commonwealth of the Bahamas. On September 12, 2011, the Bahamian Court of Appeals affirmed the trial court's decision—Peter Robert Hall (Appellant) and Maritek Bahamas Limited (Respondent), (SCCiv App No. 8 of 2009). Plaintiff then appealed to the Judicial Committee of the

Privy Council in London. On May 18, 2015, the Privy Council dismissed Plaintiff's appeal. Privy Council No. 013 of 2013, Easter Term [2015] UKPC 23 (collectively, the "Bahamian Action").

**5.** SAC, at 2–5.

**6.** Plaintiff also asserts that a lawsuit in Ontario, Canada (the "Ontario litigation") brought by one of the Canadian officers against the other Canadian officer was a part of and facilitated Defendants' tortious conduct. That lawsuit was settled in February 2005. *Young v. Fulton*, 2005 ONCJ (SETTLED, Apr. 2005). Plaintiff further adds that a 2007 stockholder lawsuit in the Delaware Chancery Court (the "Chancery Court Action") against the allegedly rogue directors is proof of the tort. That matter, also, was settled and there was no finding of liability. *Wang v. Fulton*, C.A. 3409–VCL, 2008 WL 3822411 (Del. Ch. June 20, 2008).

erty") owned by Maritek Bahamas. The land is situated on Long Island, The Bahamas. The purchase price was $11.5 million and Plaintiff deposited $1.15 million toward the purchase of the property. The disputed contract was signed on October 11, 2002,[7] however Plaintiff is a "non-Bahamian and could not acquire [Bahamian] land without first obtaining a permit from the government."[8] Plaintiff contends that he invested "an enormous amount of time, energy, and money" into plans to develop the land and that those plans were willfully undermined by the Defendants.[9]

As grounds for this complaint, Plaintiff refers to the differing versions of the June 2005 Maritek Board of Directors (the "Board") meeting minutes which were not finalized until approximately two weeks before Maritek Bahamas initiated a lawsuit against Plaintiff in October 2005. Plaintiff also points to other Maritek activity in June of 2005 where Maritek authorized sale of part of the Bahamian parcel to a corporate entity owned by Defendant Young.

In October 2005, Maritek Bahamas sued Plaintiff in a Bahamian court seeking a declaration that the contract was unenforceable and void, or in the alternative, that Plaintiff had breached the contract by failing to satisfy the condition precedent of obtaining a government permit.

Trial in the Bahamian Action commenced in late 2007. In July 2008, Plaintiff sued Fulton and Young in Delaware.

On December 15, 2008, the Bahamian court issued a ruling that was not favorable to Plaintiff. Plaintiff appealed to the Court of Appeals of the Commonwealth of the Bahamas. Then Plaintiff amended his Delaware complaint on January 23, 2009.

On April 29, 2009, based on the above series of events, the Superior Court stayed the Motion to Dismiss Plaintiff's Amended Complaint pending the outcome of the Privy Council appeal.[10] The Court wrote that a stay is discretionary and that:

"[t]his discretion may be properly asserted on the ground that another action is pending in a different jurisdiction, even though not between the same parties and even though the issues are not identical in all respects, where that other action will probably settle or greatly simplify the issues presented."[11]

The Court added,

"[t]he threshold requirement for Plaintiff to state a claim for tortious interference with contract is, of course, demonstrating the existence of a valid contract.[12] As stated previously, a final ruling from the Bahamian Courts that no contract existed between Plaintiff and [Maritek Bahamas] would effective-

---

7. The Second Amended Complaint, Motion to Dismiss, hearing, briefing, and a Delaware Superior Court stay issued on April 29, 2009, are the sources of these facts. Despite extensive factual detail, this Motion is not converted into a Summary Judgment motion and neither side has suggested that the Motion should be considered a Motion for Summary Judgment.

8. Privy Council, at ¶ 1.

9. SAC, at 3. Plaintiff does not allege that he obtained the necessary government permit.

10. *Hall v. Maritek Corp.,* 2009 WL 1160372, at *2 (Del. Super. Apr. 29, 2009).

11. *Hall,* 2009 WL 1160372, at *3 (*citing Wilmington Trust Company v. Lucks,* 1999 WL 743255 (Del. Super. June 18, 1999)). *See also Kahn v. McCarthy,* 2008 WL 4482704 (Del. Ch. Sept. 24, 2008); *In re TGM Enters.,* 2008 WL 4261035 (Del. Ch. Sept. 12, 2008); *Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 683 (Del. 1964).

12. *Hall,* 2009 WL 1160372 (*citing Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.,* 1997 WL 529587, at *14 (Del. Super. Jan. 29, 1997)).

ly eviscerate the claims presently before the Court. However, no final judgment has been rendered and Plaintiff represents to the Court that he intends to appeal any adverse ruling by the Bahamas Appellate Court to the Privy Council in London, England. Given the lack of finality with respect to the Bahamian Action, the Court is not in a position to evaluate the collateral effect of a final judgment from the Bahamian Courts. That being said, the most prudent course of action for this Court to take is to stay this case until such time as a final judgment is rendered in the Bahamian Action. When that occurs, this Court will be in a position to determine the collateral effect, if any, of that ruling." [13]

On September 12, 2011, the Court of Appeals of the Commonwealth of the Bahamas also ruled against Plaintiff. It held that Plaintiff did not have a valid or enforceable contract with Maritek Bahamas.[14] The Bahamian appellate court also found that, even if the land purchase contract were valid, Plaintiff had repudiated and materially breached its terms by failing to pay the required deposit.[15] Plaintiff appealed that decision to the Judicial Committee of the Privy Council in London, England.

On May 18, 2015, the Privy Council issued its decision and a costs order was issued on April 14, 2016.[16] The Privy Council advised Her Majesty that Plaintiff's appeal (of the Bahamian courts' determination that Plaintiff did not have an enforceable contract) should be dismissed.[17]

On July 7, 2016, the parties filed a Stipulation in this Court notifying the Court that a "final judgment was rendered in related litigation pending in The Commonwealth of the Bahamas ..." This Court removed the stay and Plaintiff filed his Second Amended Complaint. Plaintiff's Second Amended Complaint now alleges that Defendants Fulton and Young engaged in intentionally tortious and unlawful conduct in their capacities as directors of Maritek, and in Defendant Fulton's case, also as an officer of Maritek. The alleged tortious acts included the knowing and intentional initiation of the Bahamian lawsuit and misrepresentation to Maritek's other directors that Plaintiff (a) did not have a valid contract with Maritek Bahamas to purchase the Bahamas Property, (b) was unable to finance the Hall Contract, (c) would not be able to carry-out the purchase of the Bahamas Property, and (d) had failed to obtain government approval for the project.[18] He also alleges deliberate concealment of pertinent meeting documents and emails. Plaintiff contends that the timing of the Bahamian lawsuit against Plaintiff in 2005, which immediately followed a Canadian lawsuit (the "Ontario litigation") between Defendants Fulton and Young wherein part of the terms of the Canadian settlement agreement involved giving the other director shares of the Bahamian parcel of land, support his

---

**13.** *Hall*, 2009 WL 1160372, at *3.

**14.** *See* footnote 4, *supra*.

**15.** *Maritek Bahamas Ltd v. Hall*, No. 2005/ CLE/gen/001198 at 71–74 ("After consideration of the evidence and the authorities commended to me, I find that the [Hall Contract] did not of itself, constitute a binding contract, between [Mr. Hall and Maritek Bahamas]").

**16.** *See* Plaintiff's Supp. Memorandum, at 5–6, Apr. 10, 2017.

**17.** Privy Council No. 013 of 2013, Easter Term [2015] UKPC 23, at ¶ 40.

**18.** *Hall*, 2009 WL 1160372, at *1.

complaint.[19]

As additional support for his Second Amended Complaint, Plaintiff further alleges that a 2007 Delaware Chancery Court Action uncovered previously undisclosed documents and varying versions of the June 2005 Maritek Board meeting. The Chancery Court Action was initiated against Defendants Young, Fulton, Maritek, and two other Maritek directors alleging that Defendants had breached their fiduciary duty by scheming to divide the disputed Bahamian parcel for their own personal benefit.[20] The Chancery Court Action was eventually resolved by a settlement where those defendants paid a sum of money to the shareholders. There was no finding of liability and (some of the) documents were produced. Plaintiff asserts that Defendants intentionally failed to disclose all drafts of the minutes and emails pertaining to the Board meeting as part of a plan to hide their scheme despite the Chancery Court order.[21]

On April 14, 2014, Plaintiff submitted the documents that had been produced in the Chancery Court Action to the Privy Council. On March 2, 2015, Defendant Fulton submitted an affidavit wherein he explained "the circumstances of the changes." [22] Nevertheless, those documents did not inure to Plaintiff's benefit. The Privy Council did not find that the additional documents were persuasive or that there was a direct exchange of information between the old directors at the time of the disputed sale and the new directors (Defendants Fulton and Young, who did not take office as directors until after the contract negotiations had ended).[23]

Plaintiff also alleges that more than 2,200 additional documents were produced after the close of the Privy Council case [24] thereby further supporting Plaintiff's claim of collusion among Defendants and concealment of their scheme. As such, Plaintiff asserts that Defendant Fulton was untruthful; records were deliberately false; there were "secret side agreements;" and that Fulton and Young colluded with Maritek to control Maritek's stock and caused Maritek to engage in a series of "dishonest" and "self-dealing transactions to implement their scheme to cheat and swindle the other Maritek Shareholders," fraudulently and dishonestly interfere with Plaintiff's plans to develop the Bahamian parcel of land, and "obtain the land for themselves." [25]

19. *Id.* According to Plaintiff, terms of the Ontario litigation settlement included that Maritek would transfer half of the Bahamas Property to Defendant Young at less than fair market value or Defendant Young would be paid a large sum of money if the Bahamas land was sold to a third party.

20. *Id.*

21. On June 10, 2008, Plaintiff attempted to intervene in the Chancery Court Action but his motion was denied. The Chancery Court wrote that "the parties here, including the people who hold the [contract] recognize that . . . whatever rights they have under contract, are subject to the determination by the Bahamian Court about Mr. Hall's contract. [Granting the motion to intervene] would just unnecessarily confuse and interject issues into this litigation that just don't need to be here." *Wang v. Fulton,* C.A. No. 3409–VCL, at 58–59, 2008 WL 3822411 (Del. Ch. June 20, 2008) (TRANSCRIPT); *Hall,* 2009 WL 1160372, at *2. However, Plaintiff was eventually allowed to intervene with a Complaint on May 30, 2013, where the parties reached a resolution of all issues raised in the Complaint in Intervention with a Stipulation and Order granted on April 10, 2014.

22. Privy Council No. 013 of 2013, Easter Term [2015] UKPC 23, at ¶ 31.

23. *Id.* at ¶ 32–35.

24. Plaintiff's Supp. Memorandum, at 4–8, 12.

25. SAC, at 2–3.

On October 21, 2016, Defendants filed a Motion to Dismiss the Second Amended Complaint. Defendants contend that dismissal is appropriate for several reasons: res judicata, collateral estoppel, claim splitting, release, and *forum non conveniens*.[26]

Defendants submit that Delaware is not the appropriate forum because the lawsuit involves Bahamian land, a purported injury in the Bahamas, a British Plaintiff, a Bahamian company, two Canadian directors, and Bahamian and British litigation. Defendants argue that litigation in Delaware would be difficult, expensive, and a hardship.

Plaintiff responds that this action should not be dismissed on *forum non conveniens* grounds because Delaware is "more centrally located" to the British and Canadian litigators, the parent company is a Delaware corporation, few potential witnesses are in the Bahamas, and that the Delaware forum is appropriate because a Delaware corporation was used to allegedly cheat its shareholders.

A hearing was held on March 10, 2017 and the parties submitted Supplemental Briefs on April 7, 2017.

Having considered these matters, the Court finds that dismissal on the basis of *forum non conveniens* grounds is appropriate. Here, Plaintiff has relied on Defendant Maritek's incorporation to bring this action in Delaware.[27] Defendants do not dispute that the Plaintiff has jurisdiction in Delaware. Rather, Defendants assert that Delaware, in this case, is not the proper forum.[28]

The law is clear that the doctrine of *forum non conveniens* allows a court to decline adjudication of a case "whenever considerations of convenience, efficiency, and justice point to the courts of another [forum]."[29] *Forum non conveniens* is a "supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined."[30]

A *forum non conveniens* dismissal is a discretionary determination that the merits should be adjudicated elsewhere.[31] The burden is on the defendant to

---

**26.** Although Defendants have asserted several grounds for its motion to dismiss, this Court's decision will only address the issue of *forum non conveniens*.

**27.** *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, — U.S. ——, 137 S.Ct. 1773, 1780, 198 L.Ed.2d 395 (2017).

**28.** "[J]ust as our cases have recognized the plaintiff's substantial interest in having important open questions of Delaware law decided by our courts, a principled application of that reasoning must give reciprocal weight to a defendant's interest in having important issues of foreign law decided by the courts whose law governs the case." *Martinez v. E.I DuPont de Nemours & Co.*, 86 A.3d 1102, 1111 (Del. 2014).

**29.** *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527–28, 67 S.Ct. 828, 91 L.Ed.

1067 (1947). *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

**30.** *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429–430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (*quoting Am. Dredging Co.*, 510 U.S. 443, 453, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994)); *cf. Tenet v. Doe*, 544 U.S. 1, 7, n.4, 125 S.Ct. 1230, 161 L.Ed.2d 82 (2005); *In re Papandreou*, 139 F.3d 247, 255 (D.C. Cir. 1998) (It is a "threshold question" and is "a deliberate abstention from the exercise of jurisdiction.").

**31.** *Sinochem*, 549 U.S. at 432, 127 S.Ct. 1184; *Am. Dredging*, 510 U.S. at 454, 114 S.Ct. 981; *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988).

"demonstrate that this 'is one of the rare cases where the drastic relief of dismissal is warranted based on a strong showing that the burden of litigating in this forum is so severe as to result in manifest hardship to the defendant.' " [32] This burden is substantial but is not intended to be preclusive.[33] In reaching its decision, the Court considers "a range of considerations," including the convenience of the litigants and "practical difficulties that can attend the adjudication of a dispute in a certain locality." [34]

 It is settled law that a plaintiff's choice of forum is favored and should rarely be disturbed unless the chosen forum is inappropriate due to "considerations affecting the court's own administrative and legal problems." [35] However, where a plaintiff is not a Delaware resident, there is no automatic preference for litigation in Delaware when there is a *forum non conveniens* challenge,[36] although the Delaware Supreme Court has continuously ruled "in favor of a plaintiff's choice of forum, particularly where there are no previously filed actions pending elsewhere." [37] Accordingly, "this Court respects and defers to the [p]laintiff's choice of forum, where a

prior pending action in another jurisdiction does not exist." [38]

▪ Here, Plaintiff is not a resident of Delaware. Plaintiff is a resident of the United Kingdom and has chosen Delaware, he asserts, because Maritek was involved in Chancery Court litigation and the prior Bahamian litigation that worked its way through the courts in the Bahamas and London is unreliable, tainted, and separate from this current tort claim. Where, as here, "the plaintiff's choice is not its home forum . . . the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is then 'less reasonable.' " [39]

 Thus, although the presumption may have less force, a plaintiff's choice of forum is to be respected "unless the balance is strongly in favor of the defendant." [40] When there is a strong balance in favor of a defendant, the Due Process Clause of the Fourteenth Amendment limits its state authority "to bind a nonresident defendant to a judgment of its courts." [41] As such, "[a] defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." [42]

**32.** *Lee ex rel. Lee v. Choice Hotels Int'l· Inc.,* 2006 WL 1148755, at *3 (Del. Super. Mar. 21, 2006) (citation omitted).

**33.** *Id.*

**34.** *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citations omitted).

**35.** *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (*quoting Koster,* 330 U.S. at 524, 67 S.Ct. 828).

**36.** *Martinez,* 86 A.3d at 1108.

**37.** *Lee ex rel. Lee,* 2006 WL 1148755, at *3.

**38.** *Pipal Tech Ventures Private ·Ltd. v. MoEngage, Inc.,* 2015 WL 9257869, at *1 (Del. Ch. Dec. 17, 2015).

**39.** *Sinochem,* 549 U.S. at 423, 127 S.Ct. 1184 (quoting *Piper Aircraft,* 454 U.S. at 255–56, 102 S.Ct. 252).

**40.** *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839.

**41.** *Walden v. Fiore,* —— U.S. ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) (*quoting World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

**42.** *Sinochem,* 549 U.S. at 423, 127 S.Ct. 1184 (quoting *Piper Aircraft,* 454 U.S. at 255–56, 102 S.Ct. 252).

■ Accordingly, the Court also considers a defendant's relationship to the forum. Here, two of the Defendants have no connection to Delaware. The third Defendant, Maritek, is incorporated in Delaware. When a defendant is a Delaware corporation, the Court will generally give great weight to that fact and that an action could be brought in Delaware.[43] The place of incorporation and the principle place of business provide a "paradigm all-purpose forum.[44] However, Delaware incorporation does not preclude dismissal on *forum non conveniens* grounds,[45] particularly in circumstances where a corporation's only Delaware presence is its registered agent or when a "state of incorporation has no rational connection to the cause of action." [46]

■ Hence, "the traditional showing a defendant must make in order to prevail on a motion to dismiss on the ground of *forum non conveniens*" does not change even if "a dispute's only connection to Delaware is the fact that the defendant is a Delaware entity." [47]

■ This Court, having considered the above circumstances, next applies several guiding factors to perform a *forum non conveniens* analysis. Those factors were set forth in *General Foods Corp. v. Cryo-Maid, Inc.*[48] (and summarized in *Taylor v. LSI Logic Corp* ).[49] The *Cryo-Maid* factors are:

(1) The relative ease of access to proof;

(2) The availability of compulsory process for witnesses;

(3) The possibility of the view of the premises;

(4) Whether the controversy is dependent upon the application of Delaware law which the Courts of this State more properly should decide than those of another jurisdiction;

(5) The pendency or non-pendency of a similar action or actions in another jurisdiction; and

(6) All other practical problems that would make the trial of the case

**43.** *See Bristol–Myers Squibb*, 137 S.Ct. at 1780; *Daimler AG v. Bauman*, —— U.S. ——, 134 S.Ct. 746, 760–61, 187 L.Ed.2d 624 (2014). *See also Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F.Supp.2d 367, 371 (D. Del. May 3, 2012) ("a defendant's state of incorporation had always been a predictable, legitimate venue for bringing suit" and a defendant can always be sued in the defendant's state of incorporation); *Intellectual Ventures I LLC v. Altera Corp.*, 842 F.Supp.2d 744, 754 (D. Del. 2012).

**44.** *Daimler*, 134 S.Ct. at 760. *See also Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 924, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011); *BNSF Ry. Co. v. Tyrrell*, —— U.S. ——, 137 S.Ct. 1549, 198 L.Ed.2d 36 (2017).

**45.** *Martinez*, 86 A.3d at 1109.

**46.** *Id.; Koster*, 330 U.S. at 527–28, 67 S.Ct. 828. "Under modern conditions corporations often obtain their charters from states where

they no more than maintain an agent to comply with local requirements, while every other activity is conducted far from the chartering state. Place of corporate domicile in such circumstances might be entitled to little consideration under the doctrine of *forum non conveniens*, which resists formalization and looks to the realities that make for doing justice." *See also Bristol–Myers Squibb*, 137 S.Ct. at 1780–82; Jacob J. Fedechko, *Martinez v. Dupont: A Look at the Future of Forum Non Conveniens in Delaware Commercial Litigation*, 40 Del. J. Corp. L. 647, 653 & n.40 (2016).

**47.** *Mar–Land Indus. Contractors, Inc. v. Caribbean Petroleum Ref., L.P.*, 777 A.2d 774, 779–80 (Del. 2001) (*citing Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 270–71 (Del. 2001)).

**48.** 198 A.2d 681 (Del. 1964).

**49.** *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1198–99 (Del. 1997).

easy, expeditious, and inexpensive.[50]

█ The *Cryo–Maid* factors provide a framework for the Court to consider whether the plaintiff's chosen forum would be an undue burden on a defendant and the court.[51] The Court's "analysis is not one in which the Court should come to a conclusion based on a tally of which, or how many, factors favor the defendant; rather, the Court must consider the weight of those factors in the particular case and determine whether any or all of them truly cause both inconvenience and hardship."[52]

█ The first *Cryo–Maid* factor is the ease of access to proof. The proximity of the evidence to the proposed forum is a consideration under the access to proof factor. In the instant case, significant expenses are certain if litigation were to occur in Delaware.[53] Plaintiff has characterized this tort case as "extremely complicated with a lot of facts"[54] and Plaintiff's lengthy Second Amended Complaint would tend to support that assessment. Plaintiff has also stated that there are between 2,200 and 5,000 pages of relevant documents[55] and that this tort case involves civil and criminal issues because the "land was taken away by fraud and criminality."[56]

Although unspecified by either side, original documents, witnesses, and information about communications and negotiations are necessary to prove or defend this case. They are not located in Delaware. With the possible exception of the documents, verbal proof would not be easily accessible. Although foreign language is not an issue in this case, it would be easier to develop the facts in another jurisdiction because all of the events took place elsewhere and witnesses who could shed light on those events are outside of Delaware.[57] Moreover, while technology may be helpful and could ease some of the difficulty of proof, "to the extent documentary and deposition evidence must be gathered, that process will largely take place [in another country] and certainly not in Delaware."[58]

█ Furthermore, Plaintiff has not shown that litigation in Delaware serves any specific convenience[59] or that there would be fewer evidentiary problems if litigated in Delaware.[60] While access to proof is a "largely insignificant" factor in the *forum non conveniens analysis* in commercial and corporate disputes,[61] Plaintiff's Second Amended Complaint is a tort action and the significance of this factor might be different in a non-commercial lawsuit which may have numerous out-of-state witnesses. Allowing this case to remain in Delaware would be inconsistent with the efficient administration of justice.

50. *Cryo–Maid*, 198 A.2d at 684.

51. *VTB*, 2014 WL 1691250, at *7 (citation omitted).

52. *Id.* (internal quotation marks and citation omitted).

53. *Lee ex rel. Lee*, 2006 WL 1148755, at *4.

54. Hearing Trans., Mar. 10, 2017, at 35.

55. Plaintiff's Supp. Memorandum, at 4, 6, 12; SAC, Exhibit 13.

56. Hearing Trans., at 46.

57. *IMO Ronald J. Mount 2012 Irrevocable Dynasty Trust U/A/D Dec. 5, 2012*, 2016 WL 297655, at *3–4 (Del. Ch. Jan. 21, 2016).

58. *Pipal Tech*, 2015 WL 9257869, at *6.

59. *Gulf Oil Corp.*, 330 U.S. at 509–10, 67 S.Ct. 839.

60. *Piper Aircraft*, 454 U.S. at 258, 102 S.Ct. 252.

61. *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1213–14 (Del. Ch. 2010).

This factor does not weigh in Plaintiff's favor.

■ The second *Cryo–Maid* factor is the availability of compulsory process for witnesses. The first and second *Cryo–Maid* factors are interrelated and difficulties will occur if the case is litigated in Delaware instead of another forum.[62]

Plaintiff's Second Amended Complaint contains several references to conversations that Plaintiff surreptitiously recorded with potential witnesses who do not reside in Delaware, other non-Delaware witnesses who were aware of their conversations with Plaintiff, and details about the circumstances surrounding the disputed contract that, assuming relevancy, would require the appearance and testimony of third party witnesses who do not reside in Delaware.

The pleadings have alleged that a Bahamian company (Coldwell Banker Bahamas) appraised the land; EMC International, Inc. (a Barbados corporation) bought the stock; and that Diamond Crystal Holdings (a Bahamian company), the Royale Bank of Canada, and Calgary Capital Investment Partnership were involved in the land transaction.[63] Employees of these entities, representatives of Bahamian law firms, real estate companies, development companies, and former Maritek Bahamas employees (who have no apparent connection to Delaware and are no longer employees of any parties to this litigation) are potential witnesses. They are in other countries and are outside of Delaware's subpoena power.[64] Moreover, crucial third party testimony from witnesses in the Bahamas and Barbados concerning the nature and value of the real estate and the suitability of the land for commercial development may be needed.

Furthermore, although Plaintiff posits that technology and video conferencing would aid in the ease of proof and availability of witnesses (and Defendants do not dispute that),[65] Plaintiff has not shown that such technology and videoconferencing could not be more easily obtained or utilized in a more suitable jurisdiction. It is also possible that some of the technology may be unnecessary if those witnesses reside in that other jurisdiction. Application of this *Cryo–Maid* factor does not weigh in Plaintiff's favor.

■ As to the third *Cryo–Maid* factor, the possibility of viewing the premises, both sides have stated that viewing the land "would not be necessary."[66] Generally, this third *Cryo–Maid* factor holds little to no weight even "in a case where there was a relevant 'premises' that the factfinder might want to 'view.'"[67] Moreover, technological alternatives exist through audiovisual, photographic, or video aids[68] and

62. *Lee ex rel. Lee*, 2006 WL 1148755, at *4.

63. SAC, at 99–103, 111.

64. Del. Super. Ct. Civ. R. 45; Hearing Trans. at 14. *See also Abrahamsen v. ConocoPhillips Co.*, 2014 WL 2884870, at *3 (Del. Super. May 30, 2014).

65. *Pipal Tech*, 2015 WL 9257869, at *6 (*citing In re Chambers Dev. Co., Inc. S'holders Litig.*, 1993 WL 179335, at *6 (Del. Ch. May 20, 1993) (citation omitted)).

66. Hearing Trans., at 14 "While we might all enjoy viewing the premises in this case, I don't think that's going to be necessary for whoever adjudicates this case. ..."

67. *Hamilton Partners*, 11 A.3d at 1212, n.17 (citing *Pena v. Cooper Tire & Rubber Co.*, 2009 WL 847414, at *6 (Del. Super. Mar. 31, 2009)).

68. *Lee ex rel. Lee*, 2006 WL 1148755, at *5. *See also Michaud v. Fairchild Aircraft Inc.*, 2001 WL 1456788, at *3 (Del. Super. Aug. 21, 2001); *Schafer v. Wal-Mart Stores, Inc.*, 2001 WL 1456697, at *3 (Del. Super. Aug. 13, 2001).

Delaware courts have consistently recognized that little is lost in the way of examining a scene when technology is used. As such, this factor is neutral and does not weigh in favor of either side. Nevertheless, this Court cannot ignore the possibility that witnesses, particularly expert witnesses, might need to view the land to aid in a determination as to whether Plaintiff's expectations were realistic or fanciful [69] and aid in the valuation of any damages. Clearly, viewing a parcel of land in the Bahamas would be more difficult if trial were to be held in Delaware.

The fourth *Cryo–Maid* factor is the applicability of Delaware law. Although "significant weight should be accorded [to] the neutral principle that important and novel issues of Delaware law are best decided by Delaware courts," [70] both sides agree that Bahamian law and English Common Law (including the principle that the loser pays the winner's litigation costs) were applicable in the contract dispute litigation. Defendants assert that Bahamian and English laws continue to be appropriate in this tort action concerning interference with Plaintiff's business expectancy [71] despite Plaintiff's assertion that, because Defendants allegedly conspired to defraud a Delaware corporation, Delaware criminal law should be applied in this civil case. [72]

The Court finds that Plaintiff's Second Amended Complaint is not dependent on the application of Delaware law. The basis of this complaint is that Defendants inappropriately acted in another jurisdiction (the Bahamas, Canada, or elsewhere) to prevent Plaintiff from developing land situated in another jurisdiction (the Bahamas) by creating side deals and misleading courts in other jurisdictions (the Bahamas, Canada, and the United Kingdom) and Plaintiff has not suggested that any plotting against Plaintiff occurred in Delaware or that any allegedly improper negotiations took place in Delaware. [73] The Bahamian decision, which was upheld by the Privy Council in London after ten years of litigation, rejected Plaintiff's claim that he had a valid contract after careful examination of the Bahamian transaction. The recent disclosure of thousands of additional documents concerns the same challenged Bahamian transaction that did not occur in Delaware. Although Plaintiff may now have more quantitative evidence to support his claims of tortious interference with his business expectancy, etc., these additional documents do not qualitatively alter the fact that the transactions that form the bases for those documents did not take place in Delaware. Although not conclusive, the apparent need to apply foreign law points toward a finding of *forum non conveniens*. [74] This factor does not weigh in Plaintiff's factor.

The fifth *Cryo–Maid* factor to be considered is the pendency or non-pen-

---

69. SAC, at 93–94. Plaintiff claims that he intended to create a health food and bio-technology plant on the property that would create 400 jobs, be environmentally sensitive, and eliminate severe unemployment.

70. *Martinez*, 86 A.3d at 1109.

71. Hearing Trans., at 6–8.

72. *Id.* at 38–41.

73. Furthermore, to the extent that Plaintiff alleges that Defendants failed to disclose additional documents to the Delaware Chancery Court, it would appear to be a Chancery Court matter.

74. *Piper Aircraft*, 454 U.S. at 260 & n.29, 102 S.Ct. 252. *See also Calavo Growers of California v. Generali Belgium,* 632 F.2d 963, 967 (2d Cir. 1980), *cert.denied* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). *See, e.g., Founding Church of Scientology v. Verlag,* 536 F.2d 429, 435 (D.C. Cir. 1976).

dency of a similar action. As previously noted, there were three prior lawsuits. One concerned Plaintiff's desire to develop the Bahamian land (a contractual dispute), another was a Canadian lawsuit between Defendants Fulton and Young whose settlement involved the possible division of the Bahamian parcel of land, and the third lawsuit was a Delaware shareholder action that involved a Delaware corporation's duty to its stockholders. All of those lawsuits have been resolved. There are no outstanding same or similar issues in other jurisdictions. This *Cryo–Maid* factor would favor Plaintiff.

■ The sixth and final *Cryo–Maid* factor is all "other practical problems that would make the trial of the case easy, expeditious, and inexpensive." [75] In the instant case, while there is technically "no issue of prior pendency of the same action in another jurisdiction," [76] Plaintiff's Second Amended Complaint is "substantially or functionally identical" [77] to the prior ten years of litigation spanning three foreign countries. There is a "common nucleus of operative facts" [78] and both sides agree (in their joint stipulation seeking removal of the Superior Court stay) that the prior litigation was "related." [79] Plaintiff's Second Amended Complaint of tortious interference with his prospective business expectancy, etc. appears to be a "collateral

effect" [80] of the Bahamian/London judgment, the Canadian litigation, and the Chancery Court settlement. This factor does not favor Plaintiff.

Defendants argue that the issues in Plaintiff's Second Amended Complaint are similar to the issues raised by Plaintiff in the prior Bahamian, London, and Chancery Court actions and that it would be easier, more expeditious, less expensive, and less burdensome to litigate these related issues in a tort suit elsewhere. To the extent that they are similar, Defendants contend that Plaintiff is seeking another bite at the apple and that the previous foreign litigation militates toward dismissal of the instant case on *forum non conveniens* grounds. [81]

■ Moreover, this current lawsuit should not be considered as an opportunity to relitigate the Canadian settlement involving non-Delaware transactions and non-Delaware residents or the Delaware stockholder settlement involving the internal affairs of a corporation and its stockholders. There must be a "connection between the forum and the specific claims at issue." [82] In view of the fact that a plaintiff's interest in having novel Delaware law questions decided in our own courts is given great weight, the *Cryo–Maid* test also suggests that a defendant's interest in

**75.** *Martinez,* 86 A.3d at 1104.

**76.** *Id.*

**77.** *VTB Bank v. Navitron Projects Corp.,* 2014 WL 1691250 (Del. Ch. Apr. 28, 2014) (*citing Chadwick v. Metro Corp.,* 2004 WL 1874652 (Del. Aug. 12, 2004) (citations omitted)).

**78.** *See Lisa, S.A. v. Mayorga,* 993 A.2d 1042, 1048 (Del. 2010). It is apparent that Plaintiffs claims and Defendant's defenses will substantively overlap factual and legal issues previously raised in the other lawsuits.

**79.** Stipulation and Order, at 1, July 13, 2016.

**80.** *Hall,* 2009 WL 1160372, at *3. The inapplicability of Delaware law is further evidenced by this prior Superior Court Order wherein the Court noted that the Bahamian determination could "simplify" the issue. *Id.* at *2.

**81.** Hearing Trans., at 43. Defendants also raise this as grounds for dismissal based on *res judicata* and collateral estoppel.

**82.** *Bristol–Myers Squibb,* 137 S.Ct. at 1781. Additionally, the Chancery Court deferred to

having the courts of the jurisdiction of the governing law decide important legal issues ought to be given some weight and reciprocal respect.[83] This *Cryo–Maid* factor does not favor Plaintiff.

Plaintiff also posits that trial in Delaware would be more expeditious and greater weight should be placed on the Delaware shareholder lawsuit because it had reliable, overlapping proof of an "overarching conspiracy to cheat Maritek shareholders." [84] Plaintiff also seems to suggest that the Bahamian/London litigation should be ignored since it was tainted by conflict of interest and false evidence and that the Canadian litigation should be collaterally considered.[85, 86] However, the prior Delaware litigation is distinguishable. It concerned the relationship between a corporation and some of its officers (and Plaintiff was not a stockholder).[87] Here, Plaintiff's

complaint does not involve a stockholder relationship.[88]

The instant case is a tort action and the previous cases were commercial in nature.[89] Although there may be similar issues and proof, the gravamen of Plaintiff's tort complaint is the alleged actual interference by allegedly rogue officers/directors [90] and its impact on Plaintiff's business expectancy. A recent Delaware Superior Court ruling seems to distinguish tort cases from commercial or corporate claims and suggests that tort cases are more suited to a finding of *forum non conveniens* than commercial or corporate cases.[91] That case was affirmed by the Delaware Supreme Court. Accordingly, Plaintiff's argument that there was a prior corporate dispute in Delaware, and therefore the instant tort case would be more expeditious in Delaware is not persuasive.[92] This *Cryo–Maid* factor does not fa-

Bahamian law concerning contract/land development issues.

**83.** *Martinez,* 86 A.3d at 1111 (*citing Diedenhofen–Lennartz v. Diedenhofen,* 931 A.2d 439, 451–52 (Del. Ch. 2007) ("Delaware has a related and equally important interest in affording comity to the courts of other jurisdictions when a dispute arises under foreign business law .... If we expect that other sovereigns will respect our state's overriding interest in the interpretation and enforcement of our entity laws, we must show reciprocal respect.").

**84.** Plaintiff's Supp. Memorandum, at 16.

**85.** *Young v. Fulton,* 2005 ONCJ (SETTLED, APRIL 2005).

**86.** Plaintiff's Supp. Memorandum, at 16.

**87.** *See In re USA Detergents, Inc.,* 418 B.R. 533 (Bankr. D. Del. Oct. 16, 2009); *Hamilton Partners,* 11 A.3d at 1213; *VantagePoint Venture Partners 1996 v. Examen, Inc.,* 871 A.2d 1108, 1112–13 (Del. 2005).

**88.** *Cf. Koster,* 330 U.S. at 522–23, 67 S.Ct. 828.

**89.** SAC, at 121–26.

**90.** Defendants submit that Plaintiff is inappropriately pursuing this Superior Court action instead of returning to Chancery court for any possible additional determination or sanctions. Hearing Trans., at 27.

**91.** *Martinez v. E.I. DuPont de Nemours & Co.,* 82 A.3d 1, 38–39 (Del. Super. 2012) (The Court should not "be willing to accept Plaintiff's elaborate attempts to attribute to [Defendants] an obscure and plainly inapplicable theory of liability ... to justify filing cases in this state. These are non-commercial and non-corporate garden-variety ... tort disputes ... for which the Delaware courts should not be automatically available to anyone who has ever sustained harm anywhere across the globe"), *aff'd by* 86 A.3d 1102. *See also Martinez v. Dupont,* 40 Del. J. Corp. L. 647, 668–74.

**92.** *See Martinez v. Dupont,* 40 Del. J. Corp. L. at 668–74. Furthermore, Plaintiff's intimation that dismissal on the basis of *forum non conveniens* should be precluded because a Delaware law firm provided legal advice (by writing an opinion letter regarding internal corporate issues) is also unpersuasive.

vor Plaintiff.

Plaintiff has unsuccessfully litigated his claim concerning the Bahamian parcel of land since 2005.[93] There are no current, same, or similar cases pending. Moreover, the Delaware Chancery Court Action settlement, which Plaintiff referenced to support his theory that the actions of the Canadian directors (Defendants Fulton and Young) were self-serving and contrary to the interests of the Delaware corporation, would tend to further attenuate Delaware's connection to Plaintiff's tort action.[94] The Bahamas (or another forum) has a greater interest in this ongoing dispute concerning the fair and orderly development of land within the borders of the Bahamas,[95] despite Plaintiff's concern for

"possible [Delaware corporation] policy reasons." [96]

Plaintiff also contends that dismissal on *forum non conveniens* grounds is inappropriate unless Defendants assert "overwhelming hardship." [97] However, recent law has held that the overwhelming hardship standard is not intended to be preclusive.[98] Thus, the previous hurdle of *Cryo–Maid* factors plus overwhelming hardship has been modified.[99] Instead, "a more restrained meaning is at the essence of the overwhelming hardship standard" [100] and "the overarching factor that a trial court must consider in a [*forum non conveniens*] analysis is substantial hardships to the defendant." [101] The current Delaware standard is now more similar to the

---

**93.** The Bahamian Court determined that Plaintiff "was not a credible witness." Defendant's Motion to Dismiss, Oct. 21, 2016, at 2 (*citing Maritek Bahamas Ltd.*, No. 2005/CLE/gen/001198, at 74).

**94.** The instant case involved rogue officers and is distinguishable from cases involving wrongful conduct of a Delaware corporation (such as a products liability action). *See Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 844 (Del. 1999) (The Delaware Supreme Court held that the products liability action could be litigated in Delaware because, among other things, the manufacturer's principal place of business was in Delaware and the product was researched and developed in Delaware).

**95.** *Martinez*, 86 A.3d at 1110–11 (citing *TA Instruments–Waters, LLC v. Univ. of Conn.*, 31 A.3d 1204, 1207 (Del. Ch. 2011) ("The claims in this case implicate paramount interests of the State of Connecticut. Although Delaware has an interest in providing a forum for one of its citizens, Connecticut has the far greater interest in this dispute. Under the circumstances, it would not be appropriate for a Delaware court to preempt the ability of a Connecticut court to weigh in . . . ."); *Shin–Etsu Chem. Co., Ltd. v. 3033 ICICI Bank Ltd.*, 9 A.D.3d 171, 178, 777 N.Y.S.2d 69 (N.Y. App. Div. 2004) ("New York courts have recognized that where a foreign forum has a

substantial interest in adjudicating an action, such interest is a factor weighing in favor of dismissal.")).

**96.** Hearing Trans., at 45.

**97.** *See Kolber v. Holyoke Shares, Inc.*, 213 A.2d 444, 447 (Del. 1965); *Chrysler First Business Credit Corp. v. 1500 Locust Ltd.*, 669 A.2d 104, 107 (1995); *Warburg, Pincus Ventures, L.P.*, 774 A.2d at 268–69.

**98.** *Hupan v. One Int'l Inc.*, 2016 WL 4502304, at *8 (Del. Super. Aug. 25, 2016) (citations omitted). *See also Martinez*, 86 A.3d at 1102, 1105 & n.14 (where the test of overwhelming hardship is more restrained and a dismissal on *forum non conveniens* grounds can be granted).

**99.** *Martinez*, 86 A.3d at 1105, 1107 ("[I]t is intended as a stringent standard that holds defendants who seek to deprive a plaintiff of her chosen forum to an appropriately high burden." (citing *Ison*, 729 A.2d at 843). *See also IM2 Merchandising & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168 (Del. Ch. Nov. 2, 2000).

**100.** *Martinez*, 86 A.3d at 1105; *IM2*, 2000 WL 1664168, at *7.

**101.** *Ison*, 729 A.2d at 846.

Federal standard and failure to plead overwhelming hardship will not automatically prevent a finding of *forum non conveniens*.[102] The Court finds that Defendants have shown substantial or manifest hardship.[103]

■ Additionally, a Delaware court is not required to "find the existence of an adequate alternate forum as a prerequisite" to dismissal on *forum non conveniens* grounds.[104] The Court has the discretion to weigh the *forum non conveniens* factors and dismiss the Delaware litigation when appropriate to avoid undue hardship and inconvenience if said factors weigh so overwhelmingly in defendant's favor.[105]

■ Lastly, Plaintiff contends that Maritek's status as a Delaware corporation should outweigh the other *Cryo–Maid* factors in this case [106] because it is in the public interest for Delaware to protect its corporations from wrongdoing. While courts may weigh "public interest" as a factor when considering *forum non conveniens* challenges,[107] Plaintiff's expressed public interest in corporations was already addressed and litigated through the Chancery Court Action and the stockholders are protected.[108, 109]

Here, expenses, practical problems, and the efficient administration of justice in a factually complex case where foreign law applies are also public interests factors which make dismissal on *forum non conveniens* grounds appropriate.[110] Moreover, there are private interests that favor *forum non conveniens* in this case. Those interests include the strong connection of the parties, witnesses, and the land to the Bahamas. In view of the fact that the Bahamian courts and the Privy Council in London have extensively litigated the contract dispute, other courts are more logically suited to also litigate Plaintiff's complaint underlying the issues with the formation of that contract. In this case, "the connection between the claims at issue and Delaware are attenuated and the defendant corporation faces an undue burden." [111]

While it is understandable that Plaintiff seeks the professionalism of the Delaware courts, Plaintiff's lack of confidence in a foreign court system [112] was not considered as a factor. Furthermore, while Plaintiff

---

102. *Piper Aircraft*, 454 U.S. at 238, 102 S.Ct. 252.

103. *But see Wilmington Sav. Fund Soc'y, FSB v. Caesars Entm't Corp.*, 2015 WL 1306754, at *7–8 (Del. Ch. Mar. 18, 2015) where the Chancery Court distinguished mere inconvenience from manifest hardship.

104. *Hupan*, 2016 WL 4502304, at *8; *Martinez*, 86 A.3d at 1112, 1113 n.46).

105. *Martinez*, 86 A.3d at 1106.

106. *See In re Asbestos Litig.*, 929 A.2d 373, 389 (Del. Super. 2006). *See also VTB*, 2014 WL 1691250, at *12.

107. Public interest factors are not required under the *Cryo–Maid* analysis, but may be analyzed under the "other practical considerations" factor. The trial court upholds discretion to weigh public interest in its analysis. *See Martinez*, 86 A.3d at 1112–13; *Martinez v. Dupont*, 40 Del. J. Corp. L. at 664–65.

108. *Koster*, 330 U.S. at 527–28, 67 S.Ct. 828.

109. To the extent that Plaintiff is dissatisfied with the production of documents in *Wang v. Fulton*, Plaintiff could pursue this matter in Chancery Court. Hearing Trans., at 27.

110. *Martinez*, 86 A.3d at 1113; *Piper Aircraft Co.*, 454 U.S. at 258–59, 102 S.Ct. 252.

111. *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 279 (Del. 2016) (citing *Martinez*, 86 A.3d at 1102).

112. Plaintiff opined that "[t]he Bahamas jurisdiction is known to have a very serious amount of corruption." Hearing Trans., at 43.

would like another opportunity to revive issues seemingly rejected by other previous courts, Defendants have made a clear showing of factors establishing substantial and manifest hardship. The circumstances of this complex, fact-driven case are such that dismissal on the basis of *forum non conveniens* grounds is appropriate in the interest of "convenience, fairness, and judicial economy."[113]

Thus, although Delaware courts are accustomed to deciding controversies in which the parties are non-residents of Delaware and where none of the events occurred in Delaware,[114] in this case, trial would not be easy, expeditious, or inexpensive if litigation were to occur in Delaware, "especially in light of the fact that none of the complained-of activity occurred in Delaware."[115]

Accordingly, having weighed the *Cryo–Maid* factors and the totality of the circumstances,[116] Defendants' Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

---

**113.** *Sinochem,* 549 U.S. at 423, 127 S.Ct. 1184.

**114.** *Taylor,* 689 A.2d at 1200.

**115.** *Id.*

**116.** In view of the fact that this case is dismissed on the basis of *forum non conveniens,* the Court has not decided the other grounds for dismissal that were raised by Defendants.