SHARONDA GOODE, Plaintiff Below, Appellant,
v.
BAYHEALTH MEDICAL CENTER, INC. Defendant Below, Appellees.
No. 03C-05-001.
Supreme Court of Delaware.
Submitted: May 2, 2007.
Decided: July 18, 2007.
Before HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, and PARSONS, Vice Chancellor,[1] constituting the Court en Banc.

ORDER
HENRY DUPONT RIDGELY, Justice.
This 18th day of July 2007, it appears to the Court that:
(1) Appellant Sharonda Goode appeals a Superior Court judgment in favor of Bayhealth Medical Center, Inc. in this civil action to recover damages for emotional distress. Judgment was entered in favor of Bayhealth after a jury found that the negligence of Bayhealth was not the proximate cause of Goode's injuries. Goode raises two arguments on appeal. First, she contends that the Superior Court erred as a matter of law by failing to instruct the jury on her claim of outrageous conduct causing severe emotional distress. Second, Goode contends that the Superior Court abused its discretion by precluding certain testimony by her psychiatrist about the duty of a hospital, from a psychiatric standpoint, with respect to the handling of bodies. We find no merit to Goode's arguments and affirm.
(2) On April 24, 2001, Goode delivered a twenty-three week stillborn girl, Denise Goode, at Bayhealth Medical Center. Although the attending hospital staff twice offered her the opportunity to see or hold Denise, Goode declined. Goode subsequently authorized the autopsy and burial of Denise's body. She claimed that she was instructed to choose a funeral home and to have the funeral director contact the hospital to arrange the release of the body.
(3) Goode testified that she was told that Bayhealth would contact her about the final disposition of Denise's body. When she had not heard from Bayhealth, Goode became worried and called the hospital on May 10, 2001. According to Goode, she was informed by the hospital staff that her baby remained in the morgue as an unidentified and unclaimed body.
(4) Goode also testified that she spoke with her chosen funeral home's director, William Torbert, regarding the situation. She said that Torbert informed her that she needed to go and identify the body before Bayhealth would release the baby to him. At trial,Torbert directly contradicted Goode's assertion. Particularly, he testified that he did not tell Goode to go to the hospital and identify the body. It is undisputed that Goode and her friend, Shavell Miller, went to Bayhealth on May 11, 2001 for the purpose of identifying Denise's body.
(5) After Goode and Miller arrived at the hospital, Goode told a secretary in the hospital's Social Services Department that she was there to claim or identify the body of her baby. The secretary received authorization from her supervisor to take Goode and Miller to the morgue. A Bayhealth security officer unlocked and opened the morgue for them. Once in the morgue, Goode was unable to go through with viewing Denise's body. It was agreed that Goode would wait in the hallway while Miller did so.
(6) The Bayhealth morgue had a large window that was covered by a venetian blind. The bottom of the blind was slightly bent, which allowed for a small unobstructed view of the inside of the morgue. Goode briefly peered through this opening and by doing so, saw the post-autopsy remains of Denise's body. Goode became extremely upset and has claimed that she suffered post-traumatic stress disorder as a result of viewing Denise. That diagnosis was not documented until April 30, 2003, nearly two years after Goode viewed Denise's body and one day before this lawsuit was filed. The evidence also showed that Goode had suffered from seven or eight previous failed pregnancies, none of which resulted in the delivery of a live child, some having been aborted and others having ended in stillbirth.
(7) Bayhealth had a Death Procedure Policy in place on May 11, 2001 which provided a protocol for the viewing of bodies. It is undisputed that this procedure was not followed by hospital staff. Bayhealth's Death Procedure Policy provided that the Clinical Coordinator must be notified if family members request to view a body. The Clinical Coordinator is then required to determine (1) whether a viewing is warranted, (2) whether the body is an "ME" (medical examiner) case, and (3) whether the party that requested the viewing is a member of the deceased's immediate family. If it is determined that a viewing is appropriate, the Clinical Coordinator must then obtain two sheets or blankets and meet security at the morgue to prepare the body for viewing. After the body is prepared, the policy required that a nurse accompany the family member to the morgue and act as a "support person." The secretary who escorted Goode was not trained on the Death Procedure Policy.
(8) After the evidence was presented, Goode requested the trial judge to instruct the jury on her claim of negligent infliction of emotional distress and also on her separate claim of outrageous conduct causing severe emotional distress. The trial judge declined the latter, finding that such an instruction "requires conduct which is absent in this case." He explained that "there is not a showing of activity on the part of the defendant which rises to the level of anything beyond inartful or inexpert, or untrained or deficiently thoughtful activity." Following the submission of the case to the jury only on the claim of negligent infliction of emotional distress, the jury found that Bayhealth acted negligently, but that its negligence was not the proximate cause of Goode's injury. The Superior Court entered judgment in favor of Bayhealth and this appeal followed.
(9) Goode first contends that the trial judge erred as a matter of law by failing to instruct the jury on her claim of outrageous conduct causing severe emotional distress. "This Court reviews de novo the Superior Court's denial of a requested jury instruction."[2]
(10) We find no merit to Goode's claim of error because the trial judge correctly concluded that there was insufficient evidence presented at trial to support an outrageous conduct instruction. Section 46 of The Restatement (Second) of Torts addresses the tort of outrageous conduct causing severe emotional distress. According to the Restatement, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[3] This Court cited Section 46 in Cummings v. Pinder[4] and held that "[t]he intentional infliction of severe emotional distress may provide the legal predicate for an award of damages, even in the absence of accompanying bodily harm, if such conduct is viewed as outrageous."[5] Section 46 applies when the actor acts intentionally or recklessly.[6] In either case, the behavior must be extreme and outrageous. "The law intervenes when the distress inflicted is so severe that no reasonable [person] could be expected to endure it."[7] Outrageous behavior is conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community.[8] It is the trial judge's responsibility "to determine in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."[9]
(11) Here, the trial judge correctly recognized that the evidence presented did not support a claim of extreme and outrageous conduct causing severe emotional distress. While negligence was demonstrated, the Bayhealth employees that responded to Goode's request to see her baby, were simply trying to accommodate a grieving mother. We agree with the trial judge that the negligent behavior here did not rise to the level of extreme and outrageous conduct. Accordingly, the Superior Court did not err in denying Goode's request for a jury instruction on outrageous conduct causing severe emotional distress.
(12) Goode's second contention is that the Superior Court abused its discretion by precluding her expert witness, Neil S. Kaye, M.D., from testifying about Bayhealth's duty to properly prepare Goode for the viewing of Denise's body. During the course of Dr. Kaye's testimony, Goode's counsel sought to elicit certain testimony regarding the duty of a hospital, from a psychiatric standpoint, with respect to the viewing of bodies. Bayhealth objected on the ground that Dr. Kaye had not been identified as a standard of care expert. The Superior Court sustained Bayhealth's objection.
(13) This Court "reviews the Superior Court's evidentiary rulings restricting or allowing expert testimony under an abuse of discretion standard."[10] "When an act of judicial discretion is under review the reviewing court may not substitute its own notions of what is right for those of the trial judge, if his judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness."[11]
(14) A trial judge has broad discretion to control scheduling and the court's docket.[12] Scheduling and pretrial orders govern discovery by establishing deadlines and also guide trial management.[13] Parties must comply with the discovery orders as a precondition to the admissibility of expert testimony at trial.[14] In this case, the Superior Court set a deadline of December 15, 2003 for the identification of experts. Goode did not identify Dr. Kaye as an expert witness until August of 2005, without any application to modify the previous deadline. Bayhealth agreed to permit the testimony of Dr. Kaye as to his diagnosis and prognosis for Goode, but clearly reserved its right to object to testimony from Dr. Kaye beyond that. With the expectation that Goode would not seek testimony beyond the subject of diagnosis and prognosis, no deposition was taken of Dr. Kaye before trial.
(15) When a party does not comply with the discovery rules and pre-trial orders, it is not an abuse of discretion for the trial judge to exclude testimony not properly identified.[15] The trial judge did not abuse his discretion when he sustained Bayhealth's objection to testimony by Dr. Kaye on the standard of care for a hospital. Moreover, Goode has not shown prejudice flowing from the trial judge's decision to preclude Dr. Kaye's opinion on the hospital's standard of care. The jury expressly found that the hospital was negligent without the aid of Dr. Kaye's testimony.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 & 4.
[2] Gutierrez v. State, 842 A.2d 650, 651 (Del. 2004) (citing Lunnon v. State, 710 A.2d 197, 199 (Del. 1998)).
[3] Restatement (Second) of Torts § 46 (1965).
[4] Cummings v. Pinder, 574 A.2d 843 (Del. 1990).
[5] Id. at 845.
[6] Restatement (Second) of Torts § 46 (1).
[7] Restatement (Second) of Torts § 46, cmt. j.
[8] Thomas v. Harford Mutual Ins. Co., 2004 WL 1102362, at *3 (Del. Super.) (citing Farmer v. Wilson, 1992 WL 331450, at *4 (Del. Super.) (citations omitted)).
[9] Restatement (Second) of Torts § 46 cmt. h; Collins v. African Episcopal Zion Church, 2006 WL 1579718 (Del. Super.); see also Thomas, 2004 WL 1102362, at *3.
[10] Bush v. HMO of Delaware, 702 A.2d 921, 923 (Del. 1996).
[11] Sammons v. Doctors for Emergency Serv., P.A., 913 A.2d 519, 528 (Del. 2006).
[12] Valentine v. Mark, 873 A.2d 1099 (Del. 2005) (Table).
[13] Sammons, 913 A.2d at 528.
[14] Id.
[15] See id. at 531.