# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSIANE SOUZA DA SILVA SOARES, )
Individually and as the Personal )
Representative of the Estate of ANTONIO )
PEREIRA SOARES, deceased, )
                       )
          Plaintiff, )
                       )
      v. )      C.A. No. K19C-12-028 NEP
                       )
CONTINENTAL MOTORS, INC., n/k/a )
CONTINENTAL AEROSPACE )
TECHNOLOGIES, et al., )
                       )
          Defendants. )

Submitted: April 4, 2023
Decided: May 3, 2023

## MEMORANDUM OPINION AND ORDER

***Upon Defendants' Motion to Dismiss on Forum Non Conveniens Grounds***
**DENIED**

***Upon Defendants' Motion to Dismiss Under Rule 37(d)***
**DENIED AND NO ALTERNATIVE SANCTIONS IMPOSED**

***Upon Defendants' Motion to Stay***
**DENIED**

***Upon Defendants' Motion for Extension of Discovery and All Trial Deadlines***
**GRANTED**

Philip T. Edwards, Esquire, Murphy & Landon, Wilmington, Delaware, *Attorney for Plaintiff*.

Ricardo M. Martínez-Cid, Esquire (argued) and Lea P. Bucciero, Esquire, Podhurst Orseck, P.A., Miami, Florida, *Of Counsel for Plaintiff*.

Andrea S. Brooks, Esquire, Wilks Law, LLC, Wilmington, Delaware, *Attorney for Defendants*.

John S. Bagby, Jr., Esquire (argued), Bagby & Associates, LLC, Paoli, Pennsylvania, *Of Counsel for Defendants*.

**Primos, J.**

## INTRODUCTION

This is a products liability action brought by Josiane Souza da Silva Soares (hereinafter "Plaintiff"), a citizen and resident of Brazil, against Continental Motors, Inc., and Continental Aerospace Technologies GmbH (hereinafter "Defendants"). Plaintiff seeks noneconomic damages (e.g., damages for emotional distress) for the death of her husband, Antonio Pereira Soares (hereinafter "Decedent"), who was killed in a plane crash allegedly caused by a faulty aircraft engine. Plaintiff does not have a visa to enter the United States, and only recently obtained a passport. As a result, she has been unable to travel to Delaware for an in-person deposition and did not appear for a properly noticed deposition in Delaware in August of 2022 (the "Delaware deposition"). Defendants' lawyers, however, are unwilling to conduct a deposition in Brazil, either in-person or remotely, due to uncertainty regarding the legality of such a deposition under Brazilian law. Shortly before the scheduled close of discovery, the parties were able to work out an agreement whereby Defendants would pay Plaintiff's travel expenses, as well as those of her children and other witnesses, to appear for in-person depositions in Uruguay (the "Uruguay depositions").

Further complicating matters, another Brazilian woman has initiated litigation in Brazil in which she claims to be the common-law wife of Decedent and argues that Plaintiff and Decedent were legally separated at the time of his death. Defendants assert that this might bar Plaintiff from recovering noneconomic damages under Brazilian law, regardless of whether they are at fault for the allegedly faulty aircraft engine.

Before this Court are four motions brought by Defendants: 1) a motion to dismiss on *forum non conveniens* grounds; 2) a motion to dismiss as a discovery sanction pursuant to Superior Court Civil Rule 37(d); 3) a motion to stay the proceedings pending litigation in Brazil; and 4) a motion for extension of discovery

and all trial deadlines.[1]  For the reasons that follow, the Court declines to dismiss or stay the action (or to impose any sanctions on Plaintiff for her failure to appear at the Delaware deposition), but will grant an extension of discovery and trial deadlines in order to give Defendants additional time to conduct discovery following the Uruguay depositions.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Procedural History

The Court described the facts and history of this action in a previous Opinion and Order,[2] and will not revisit them at length here.  Decedent was killed in a plane crash in the Turks and Caicos Islands (hereinafter "TCI") on December 23, 2017, allegedly due to the failure of an engine manufactured and sold by Defendants.  Plaintiff filed the present action on December 20, 2019.  Defendants moved to dismiss the action as time-barred, arguing that, per Delaware's Borrowing Statute, TCI's one-year statute of limitations should apply because the action arose in TCI as the location of the injury.[3]  The Court denied that motion, reasoning that, at least on the facts as pleaded in the First Amended Complaint, "TCI, as the location of the accident, is fortuitous and therefore 'less central' to the choice-of-law analysis."[4] The Court did not, however, make a final choice of law determination, noting that further discovery might shed light on which jurisdiction has the most significant relationship with the occurrence and the parties.[5]  The parties have engaged in extensive discovery throughout the litigation and have required Court intervention in various discovery disputes.

---

[1] The Court has already denied without prejudice a related motion to compel discovery for reasons stated on the record at oral argument.  *See* Tr. of Oral Arg. (D.I. 255) at 143:22–144:9.
[2] *See Soares v. Cont'l Motors, Inc.*, 2021 WL 6015701, at *1–2 (Del. Super. Dec. 17, 2021).
[3] *Id.* at *3.
[4] *Id.* at *11.
[5] *Id.*

4

On December 8, 2022, Defendants filed a motion to dismiss on *forum non conveniens* grounds,[6] and Plaintiff filed a response to that motion on December 27, 2022.[7] Defendants followed that with another motion to dismiss on December 28, 2022, this time invoking Superior Court Civil Rule 37(d).[8] On January 17, 2023, Defendants filed two additional motions, a motion to stay and a motion to compel.[9] Plaintiff filed a response to the Rule 37(d) motion on January 18, 2023,[10] and responses to the motion to compel and motion to stay on February 13, 2023.[11] The Court heard a consolidated oral argument on all four motions on February 17, 2023, denied the motion to compel without prejudice, and reserved decision on the remaining three motions.[12]

The discovery deadline passed on March 16, 2023,[13] and trial is scheduled to commence in July 2023. On March 16, 2023, the date discovery was set to close, Defendants filed a motion for extension of discovery and trial deadlines,[14] which Plaintiff opposed in a response filed on March 31, 2023.[15] The Court declined to hold a separate oral argument on the motion to extend discovery and trial deadlines.

---

[6] Defs.' Mot. to Dismiss on Forum Non Conveniens Grounds (D.I. 200).

[7] Pl.'s Resp. to Defs.' Mot. to Dismiss on Forum Non Conveniens Grounds (D.I. 210).

[8] Defs.' Mot. for Dismissal Under Rule 37(d) (D.I. 211) [hereinafter "Mot. to Dismiss – Rule 37(d)"].

[9] Defs.' Mot. for Stay (D.I. 214) [hereinafter "Mot. to Stay"]; Defs.' Mot. to Compel (D.I. 215).

[10] Pl.'s Resp. to Defs.' Mot. for Dismissal Under Rule 37(d) (D.I. 216).

[11] Pl.'s Resp. to Defs.' Mot. to Compel (D.I. 231); Pl.'s Resp. to Defs.' Mot. to Stay (D.I. 232) [hereinafter "Resp. to Mot. to Stay"].

[12] The Court directed Defendants' counsel to supplement the record with additional information pertaining to the Rule 37(d) motion, which she did in a letter dated March 3, 2023. *See* D.I. 245 and D.I. 247.

[13] Upon Plaintiff's unopposed request, the Court previously extended the discovery deadline by 60 days. *See* Pl.'s Mot. for Extension of Trial Deadlines (D.I. 222); Order (D.I. 227).

[14] Defs.' Mot. for Extension of Disc. and all Trial Deadlines (D.I. 250) [hereinafter "Mot. for Extension"].

[15] Pl.'s Resp. to Defs.' Mot. for Extension of Disc. and Trial Deadlines (D.I. 256).

## II. Defendants' Efforts to Depose Plaintiff

One primary point of disagreement between the parties has been the location and nature of Plaintiff's deposition. On January 19, 2022, counsel for Defendants sent an email asking for dates when Plaintiff could "be deposed in Delaware."[16] When Plaintiff's counsel asked about the possibility of conducting a remote deposition via Zoom instead, Defendants' counsel replied that it was their clients' "position that Plaintiff should appear in-person in Delaware, where she chose to file the lawsuit."[17] Plaintiff's counsel responded that it was not possible for Plaintiff to travel to the United States because she was "of meager means" and lived in a rural area, lacked the requisite passport or visa to travel internationally, and might be unsuccessful in obtaining a visa even if she undertook the necessary travel to a city in order to apply at a U.S. embassy or consulate.[18] The email concluded with an offer to conduct an in-person deposition in Brazil or a remote deposition via Zoom.[19]

Undeterred, on July 8, 2022, Defendants noticed Plaintiff for an in-person deposition to take place in Delaware on August 18, 2022.[20] Plaintiff's counsel responded via email that "Plaintiff does not yet have a visa or passport, so will appear by zoom if the date is clear."[21] Finally, in an email dated July 13, 2022, Defendants' counsel declined again to agree to a Zoom deposition, citing concerns about the legality of a Zoom deposition of a witness in Brazil.[22] The email concluded with the following: "Defendants expect that Plaintiff will personally appear in Delaware as set forth in the Notice of Deposition served on July 8, 2022 unless we can come to

---

[16] Mot. to Dismiss – Rule 37(d) Ex. 1 at 2.
[17] *Id.* at 1–2.
[18] *Id.* at 1. Plaintiff's counsel reiterated essentially the same concerns in a letter dated June 17, 2022. *Id.* Ex. 2.
[19] *Id.* Ex. 1 at 1.
[20] *Id.* Ex. 3.
[21] *Id.* Ex. 4.
[22] *Id.* Ex. 5 at 1–2.

an agreement on a mutually agreeable date when Plaintiff will appear in-person in Delaware."[23]  Plaintiff's counsel responded on July 15 that Plaintiff "does not have the requisite passport or visa so *it is 100% impossible for her to appear in the US on August 18* or for us to agree to a date certain in the future as we do not know when or if she will be able to obtain these documents (although we have requested that she begin the process)."[24]  As far as the Court can discern on the record before it, this was the final communication regarding the deposition prior to the noticed date.[25]  Neither party sought intervention of the Court in the intervening month.

When Defendants' counsel attempted to go forward with the deposition on August 18, 2022, Plaintiff unsurprisingly did not appear.  Defendants' counsel read a statement into the record and concluded the "deposition" 18 minutes after it was scheduled to begin.[26]

The parties did eventually reach an agreement to facilitate Plaintiff's in-person deposition. On February 15, 2023 (two days prior to the scheduled oral argument on the pending motions), Defendants noticed Plaintiff and several other Brazilian witnesses, including Plaintiff's children, for in-person depositions in Uruguay, to take place on March 1, 2023.[27]  Counsel for Defendants explained at oral argument that Plaintiff had agreed to be deposed in person in Uruguay, but only if Defendants paid all of the travel expenses for her and her children, to include

---

[23] *Id.* at 2.

[24] *Id.* at 1 (emphasis supplied).

[25] Defendants' counsel was afforded an opportunity after oral argument to supplement the record with any additional communications between the parties that occurred between the July email exchange and the deposition date on August 18, 2022.  Counsel sent a letter indicating that she had prepared for the deposition at the instruction of Defendants' prior *pro hac vice* counsel in case Plaintiff had obtained a passport and visa in the meantime and appeared in-person.  However, there is no indication that any further communication between Plaintiff's counsel and Defendants' counsel had occurred. *See* D.I. 247 ("Undersigned counsel has searched her emails and has not located any written communications between defense counsel and Plaintiffs' counsel.").

[26] *See* Mot. to Dismiss – Rule 37(d) Ex. 6.

[27] *See* Notices of Deposition (D.I. 233–238).

airfare, lodging, and food.[28]  The depositions took place as scheduled on March 1 through March 3, 2023.[29]

## III.    Actions in the Brazilian Court System

The parties have identified several actions pending in the Brazilian court system pertaining to Decedent's death and Plaintiff's right to recover noneconomic damages.

First, and most importantly, a Brazilian woman, Gessica Souza (hereinafter "Ms. Souza") filed a civil action (hereinafter the "Common Law Marriage Action") in 2018 alleging that she was Decedent's common law wife at the time of his death and arguing that she (rather than Plaintiff) is the party entitled to recover "moral damages" for his death.[30] However, according to docket entries submitted by Plaintiff to this Court, Ms. Souza never appeared in that action or submitted any evidence.  On January 30, 2023, the Brazilian court entered a docket entry indicating that, in light of Ms. Souza's failure to appear, "the case file is concluded."[31]  In an affidavit submitted to the Court, Plaintiff's Brazilian attorney explained that Ms. Souza "has lost the right to introduce any evidence in the case."[32]  At oral argument before this Court, Plaintiff's counsel represented that while the Common Law Marriage Action is not "technically terminated yet," he believes that this will lead to "some sort of dismissal or closure."[33]  It is unclear how long this process might take.

Second, Defendants point to an action for "moral damages" brought by Plaintiff against Decedent's employer in Brazilian Labor Court (hereinafter the "Labor Action").[34]    That action, however, was, according to Defendants,

---

[28] Tr. of Oral Arg. at 14:5–15:17.
[29] Mot. for Extension at 1.
[30] Mot. to Stay at 3 and Exs. A and B.
[31] Resp. to Mot. to Stay at 2 and Ex. B at 5.
[32] *Id.* Ex. C at 2.
[33] Tr. of Oral Arg. at 6:7–22.
[34] Mot. to Stay at 4 and Exs. C and D.

"suspended" pending resolution of the Common Law Marriage Action.[35] It is unclear how the most recent development in the Common Law Marriage Action affects the Labor Action.

Third, Plaintiff points to an action in which a Brazilian court awarded the proceeds of Decedent's insurance policy to her and her children, and in doing so explicitly noted that no evidence had been submitted in that action to corroborate Ms. Souza's allegations regarding her alleged common-law marriage with Decedent.[36]

Fourth and finally, Defendants' counsel asserted for the first time at oral argument that Plaintiff "has an action in Brazil against Continental" and other defendants that he characterized as a "savings action."[37] Plaintiff's counsel, however, responded that the action is not a savings action or really an action at all—rather, it is a "protesto," which he further explained is "a filing that says not that you are entering into suit against anyone" but rather serves "to toll the statute of limitations" and put parties on notice of "a potential claim against them."[38]

---

[35] *Id.* Defendants cite generally to Exhibit C (court records of the Labor Action written in Portuguese) and Exhibit D (an English-language summary of those records) for the proposition that the Labor Action was suspended. Based on the Court's review of Exhibit D, it appears to state only that Decedent's employer argued that the action should be stayed (as an alternative to dismissal without prejudice), without stating whether that request was granted or denied by the labor court. *See id.* Ex. D Entry 5 ¶¶ 5 and 6. However, for the purpose of deciding the instant motions, the Court accepts Defendants' uncontested representation that the Labor Action was suspended.

[36] Resp. to Mot. to Stay at 3–4 and Ex. D at 4.

[37] Tr. of Oral Arg. at 18:4–9.

[38] *Id.* at 51:11–18.

**DISCUSSION**

## I. Forum Non Conveniens

A motion to dismiss on *forum non conveniens* grounds is addressed to the sound discretion of the trial court.[39] The presumption is that a plaintiff's choice of forum should be respected, although that presumption is somewhat weaker, where, as here, the plaintiff is a foreign national.[40] In order "to prevail under the *forum non conveniens* doctrine, a defendant must meet the high burden of showing that the traditional *forum non conveniens* factors weigh so heavily that the defendant will face 'overwhelming hardship' if the lawsuit proceeds in Delaware."[41] In other words, the question for the Court is whether Defendants have established that this "is one of those rare cases where the drastic relief of dismissal is warranted based on a strong showing that the burden of litigating in this forum is so severe as to result in manifest hardship."[42] However, the Delaware Supreme Court has cautioned that the "overwhelming hardship" standard is "not intended to be preclusive"—rather, it is a "stringent standard that holds defendants who seek to deprive a plaintiff of her chosen forum to an appropriately high burden."[43]

Where, as here, there is no "prior pendency of the same action in another jurisdiction," the Court must consider six factors, known as the *Cryo-Maid* factors, which are:

(1) the relative ease of access to proof;

(2) the availability of compulsory process for witnesses;

---

[39] *Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014), *as revised* (Mar. 4, 2014).

[40] *See Ison v. E.I. DuPont de Nemours & Co.,* 729 A.2d 832, 835 (Del. 1999) (explaining that the "fact that the plaintiffs are foreign nationals does not deprive them of the presumption that their choice of forum should be respected" but noting that the "presumption is not as strong in the case of a foreign national plaintiff as in the case of a plaintiff who resides in the forum").

[41] *Martinez*, 86 A.3d at 1104 (quoting *Ison,* 729 A.2d at 835).

[42] *Id.* at 1105 (quoting *Ison*, 729 A.2d at 835).

[43] *Id.*

10

(3) the possibility of the view of the premises;

(4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;

(5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[44]

Even if all of the factors favor the defendants, they may still prevail only upon a showing that the "factors weigh so overwhelmingly in their favor that dismissal of the Delaware litigation is required to avoid undue hardship and inconvenience to them."[45]

Here, as discussed in more detail below, the Court finds that only the first two factors weigh in favor of Defendants, given that the evidence and witnesses are not in Delaware and are not subject to compulsory process in Delaware. However, taken together, these factors are not enough to rise to the level of overwhelming hardship. The remaining factors are inconclusive except for the final factor, which allows this Court to take into account practical considerations, including the amount of time and resources already devoted to this case by the parties and the Court over the last three years.

---

[44] *Id.* at 1104; *see also Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1037 (Del. 2017) ("Typically, when *Cryo–Maid* is invoked, the plaintiff has chosen Delaware as its first forum. When that is the case, for dismissal to be granted, the *Cryo–Maid* factors must weigh 'overwhelmingly in favor of the defendant.'" (quoting *Kolber v. Holyoke Shares, Inc.*, 213 A.2d 444, 447 (Del. 1965))). These six factors take their name from *General Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964).

[45] *Martinez*, 86 A.3d at 1106; *see also id.* at 1104 ("It is not enough that all of the *Cryo–Maid* factors may favor defendant." (quoting *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship*, 669 A.2d 104, 105 (Del. 1995))).

### a. Relative Ease of Access to Proof

The first factor, ease of access to proof, weighs in favor of dismissal on *forum non conveniens* grounds, but not to the degree of establishing overwhelming hardship. Defendants argue in their motion that the evidence and witnesses relating to the plane crash are in TCI and that the witnesses who can speak to Plaintiff's emotional damages are in Brazil. With respect to the physical evidence of the crash, however, Defendants have "failed to identify specific evidence that could not be produced in Delaware," or otherwise show that they were unable to access evidence upon request.[46]

Defendants' stronger point, emphasized at oral argument, is that there are Brazilian witnesses with testimony pertinent to the issue of noneconomic damages, including Plaintiff, her children, and her psychologist, as well as others who may yet be identified.[47] They argue that this poses an exceptional hardship because it is "illegal" to conduct discovery in Brazil, including depositions (even those conducted virtually by an attorney outside of Brazil).[48] Regarding the legality of depositions in Brazil, Defendants rely on a now partially outdated advisory of the United States Department of State (hereinafter the "State Department") quoted extensively in a 2015 federal district court decision, *Bigpayout, LLC v. Mantex Enterprises, Ltd.*[49] While there have been some changes since then (e.g., Brazil has since joined the Hague Convention on the Taking of Evidence Abroad in Civil and Criminal Matters), it remains true that Brazil "permits depositions or other evidence gathering only with the participation of its court system."[50] Thus, while it is not the case,

---

[46] *GXP Capital, LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 103 (Del. 2021).
[47] Tr. of Oral Arg. at 20:14–22 and 22:5–13.
[48] *Id.* at 31:11–32:8.
[49] 2015 WL 5970855, at *1 (D. Utah Oct. 13, 2015).
[50] U.S. Department of State - Bureau of Consular Affairs, *Brazil Judicial Assistance Information*, Travel.State.Gov Legal Resources: Judicial Assistance Country Information (Dec. 8, 2021), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-

strictly speaking, that it is illegal to gather evidence or conduct depositions in Brazil, the necessary involvement of the Brazilian court system has potential to create hardship for Defendants.[51]

### b. Compulsory Process for Witnesses

The availability of compulsory process for witnesses closely relates to the ease of access to proof.[52]  Defendants are correct that this Court cannot compel Brazilian witnesses to appear at trial or to sit for depositions.  However, the Court notes that Defendants have already deposed multiple Brazilian witnesses in Uruguay, pursuant to an agreement between the parties.  Defendants raised the prospect at oral argument

Information/Brazil.html.  The State Department website provides the following additional information:

> Evidence requests may be submitted directly to the Brazilian Central Authority. The United States is not a party to the evidence provisions of the Inter-American Convention on Letters Rogatory and Additional Protocol. **Brazilian authorities do not permit persons, such as American attorneys, to take depositions for use in a court in the United States before a U.S. consular officer, with the assistance of a Brazilian attorney, or in any other manner.** Brazilian law views the taking of depositions for use in foreign courts as an act that may be undertaken in Brazil only by Brazilian judicial authorities. The Government of Brazil asserts that, under Brazilian Constitutional Law, only Brazilian judicial authorities are competent to perform acts of a judicial nature in Brazil. Brazil has advised it would deem taking depositions in Brazil by foreign persons to be a violation of Brazil's judicial sovereignty. **Such action potentially could result in the arrest, detention, expulsion, or deportation of the American attorney or other American participants.** The United States recognizes the right of judicial sovereignty of foreign governments based on customary international law and practice. **It is the State Department's understanding that the Brazilian prohibition on taking depositions by foreign persons extends to telephone or video teleconference depositions initiated from the United States of a witness in Brazil.**

*Id.* (emphasis supplied).  The Court takes judicial notice "of the information found on this government site because that information can be 'accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *MidFirst Bank v. Mullane*, 2022 WL 4460810, at *5 n.35 (Del. Super. Sept. 26, 2022) (quoting D.R.E. 201(b)(2)).

[51] The Court notes, however, that there is no indication that Defendants have attempted to find out the process for submitting evidence requests through the Brazilian Central Authority, as indicated on the State Department website. *See supra* note 50 ("Evidence requests may be submitted directly to the Brazilian Central Authority.").

[52] See *Hall v. Maritek Corp.*, 170 A.3d 149, 162 (Del. Super. 2017) ("The first and second *Cryo–Maid* factors are interrelated . . ."), *aff'd*, 182 A.3d 113 (Del. 2018) (TABLE).

that they may be unable to depose Ms. Souza about her relationship with Decedent,[53] but there is no indication to the Court that Defendants have actually sought to obtain her deposition. Nevertheless, the Court acknowledges that obtaining depositions from Brazilian witnesses may continue to pose a challenge in this case. Thus, the Court concludes that this factor weighs in favor of Defendants.

### c. View of the Premises

The possibility of view of the premises tends to carry little weight in the *Cryo-Maid* analysis, and no argument has been made to suggest that viewing the premises will be necessary here.[54] Thus, it does not weigh one way or the other in this case.

### d. Delaware (or Foreign) Law

In their motion, Defendants rely heavily on the fourth *Cryo-Maid* factor, i.e., "whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction," or, more precisely, its "implicit and logical corollary," that "important and novel issues of other sovereigns are best determined by their courts where practicable."[55] However, Defendants' reliance on this factor is misplaced. Unlike in *Martinez v. E.I. DuPont de Nemours*, the case cited by Defendants, no novel or complex issue of foreign law has been identified as necessary to the resolution of this case. In *Martinez*, the Delaware Supreme Court emphasized that "a Delaware court was being asked to decide complex and unsettled issues of Argentine tort law, based on expert testimony extrapolating from sources of law expressed in a foreign

---

[53] Tr. of Oral Arg. at 130:4–18.

[54] *See Hall*, 170 A.3d at 162 (Del. Super. 2017) ("Generally, this third *Cryo–Maid* factor holds little to no weight even 'in a case where there was a relevant 'premises' that the fact-finder might want to 'view.'" (quoting *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1212 n.17 (Del. Ch. 2010)).

[55] *Martinez*, 86 A.3d at 1109–10.

14

language . . . ."[56] Here, by contrast, there has yet to be a judicial determination of which jurisdiction's law will apply, and it may yet be Delaware law.[57]

Defendants argue in passing that Brazilian law should apply to the determination of Plaintiff's entitlement, if any, to noneconomic damages[58] and possibly to the issue of liability as well.[59] That question, however, is not yet properly before the Court absent briefing or argument on 1) whether there is a conflict of law between Brazil and Delaware on a material issue (as opposed to a false conflict, in which case Delaware law applies); and if so, 2) which jurisdiction has the most significant relationship to the occurrence and the parties.[60] Neither party has opted yet to file a motion to determine choice of law.[61] Nothing in *Martinez* suggests that the mere possibility that a question of foreign law will arise warrants dismissal. Since it is not yet clear whether Delaware law or the law of another jurisdiction will apply, the Court concludes that this factor is neutral in the *forum non conveniens* analysis.

---

[56] *Id.* at 1108.

[57] *See Soares*, 2021 WL 6015701, at *10 (explaining that Brazil, Germany, Delaware, and Alabama each have possible relationships with the occurrence and the parties in this case).

[58] *See* Mot. to Stay at 5 ("Brazil is where the relationships arise which control the issue of Josiane Soares' right to pursue and recover non-economic damages, and Brazilian law should be applied to that issue.").

[59] Tr. of Oral Arg. at 34:20–35:1 ("Brazilian law of liability determines under what circumstances its citizens can get redress for products that are alleged to have failed. Brazil is the one that has the interest in protecting its own citizens from faulty products.").

[60] *See Soares*, 2021 WL 6015701, at *4 (explaining the two-part test used by Delaware to determine which jurisdiction's law applies to an issue); *see also In re CVS Opioid Ins. Litig.*, 2022 WL 3330427, at *10 (Del. Super. Aug. 12, 2022) ("At this point, the Court need not choose between Delaware and Rhode Island law because there simply appears no real conflict between them. So the fourth *Cryo-Maid* factor does not weigh on the side of dismissal/stay of the Delaware Action in favor of the Rhode Island Action." (internal footnote omitted)).

[61] *See Soares v. Cont'l Motors, Inc.*, 2022 WL 153239, at *5 (Del. Super. Jan. 18, 2022) (indicating that "a motion to determine choice of law, if appropriate, would be ripe for decision" after the case is further developed through discovery).

15

### e. Pendency or Nonpendency of Similar Actions

Based on the representations of the parties, both in the pleadings and at oral argument, the Court is not persuaded that there are any sufficiently similar actions, particularly actions involving the same parties, to support dismissal on *forum non conveniens* grounds. The only action involving Defendants is the "protesto" action mentioned at oral argument, which, as far as the Court can discern without any written submissions about it, is not a live action and would serve only to toll the statute of limitations in Brazil if the Court were to dismiss the present action.

### f. Other Practical Considerations

This final factor "is neither hollow in meaning nor rigid in application."[62] Among other things, "a trial court may weigh the efficient administration of justice and analogous considerations under the rubric of the 'Other Practical Considerations' *Cryo–Maid* factor."[63] Moreover, one "significant consideration under this factor is the amount of judicial resources that the court already has devoted to the case."[64]

Here, as in *Harris v. Harris*, "[t]he parties have litigated in this court for three years, and the court has expended a significant amount of time addressing and resolving discovery disputes."[65] When asked at oral argument why Defendants waited until after years of discovery to file this motion, counsel for Defendants responded that "once the plaintiff didn't appear for deposition, it became clear that these burdens of Brazilian law was [sic] impeding our discovery effort" and that Plaintiff's failure to disclose certain documents made "clear that we had no ability to even investigate this matter legally in Brazil."[66] While these are legitimate issues

---

[62] *Martinez*, 86 A.3d at 1112.
[63] *Id.* at 1113.
[64] *Harris v. Harris*, 2023 WL 355179, at *13 (Del. Ch. Jan. 23, 2023).
[65] *Id.*
[66] Tr. of Oral Arg. at 28:1–20.

to be addressed in discovery motions, they do not alleviate the Court's concern that Defendants have waited until this late in the litigation to seek dismissal on *forum non conveniens* grounds. After the progress made thus far, it would be contrary to both the public interest and the interests of the parties to discard that progress outright and force Plaintiff to begin the litigation anew in an alternate forum.

Thus, the Court finds that this factor weighs heavily in favor of Plaintiffs and against dismissal.[67] The Court is mindful that the "public interest factor will seldom, in isolation, be dispositive of whether dismissal on the grounds of *forum non conveniens* is warranted."[68] It is not dispositive here, but only underscores the point that Defendants have not met their burden of establishing overwhelming hardship. While Delaware may be inconvenient in some respects, the locations of witnesses and evidence in this case are not a great enough burden to establish overwhelming hardship,[69] especially in light of the time and resources already expended by the Court and the parties in preparing this case for trial in Delaware. Thus, in the Court's discretion, the motion to dismiss on *forum non conveniens* grounds is **DENIED**.

## II. Civil Rule 37(d)

Defendants ask the Court to dismiss the entire action pursuant to Superior Court Civil Rule 37(d) because of Plaintiff's failure to appear at the Delaware

---

[67] The Delaware Supreme Court has indicated that, in evaluating the "other practical problems" prong in a *forum non conveniens* analysis, "the Superior Court should consider, on a case-by-case basis, whether the court's resources should be deployed to resolve cases with little connection to Delaware[,]" especially where, as here, "Delaware has no real connection to the dispute except for the defendants' place of incorporation." *Aranda v. Philip Morris USA Inc.*, 183 A.3d 1245, 1252–53 (Del. 2018). Accordingly, this factor might weigh differently had Defendants filed this motion earlier in the case, rather than at present, after the Court has already devoted significant time and resources to this case.

[68] *Martinez*, 86 A.3d at 1108.

[69] *See Berger v. Intelident Sols., Inc.*, 906 A.2d 134, 136 (Del. 2006) (concluding that while defendants may find Delaware "inconvenient" where "all of the documents and all of the likely witnesses in this dispute are located outside of Delaware" they would not "be subjected to overwhelming hardship based on the location of documents and witnesses").

17

deposition.[70]   They argue in their written motion that dismissal is appropriate because Plaintiff neither appeared nor filed a protective order pursuant to Superior Court Civil Rule 26(c).   However, counsel for Defendants acknowledged at oral argument that other sanctions short of dismissal might be appropriate.[71]  Specifically, among other alternatives, it was suggested that the Court might order Plaintiff to reimburse Defendants for the travel expenses they paid to facilitate the Uruguay depositions.[72]

Rule 37(d) provides a variety of sanctions that the Court "may" impose if a party fails to appear for a properly noticed deposition, including, *inter alia*, "dismissing the action or proceeding or any part thereof . . ."[73]  Rule 37(d) also provides that a party's "failure to act . . . may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c)."

The Court notes first that "dismissal is the ultimate sanction, and generally it should not be used except in extreme cases, where other sanctions have proved ineffective."[74]  In support of dismissal, Defendants cite *DeCreney v. Barranco*, a case in which the Court of Chancery denied a Texas plaintiff's motion for a

---

[70] Defendants' position is that the motion to dismiss on Rule 37(d) grounds has not been mooted by the agreement to conduct depositions in Uruguay because they have been "effectively prevented" from conducting discovery on Plaintiff's "psychological damages" prior to her deposition and are thus far behind where they would otherwise be in the discovery process. *See* Tr. of Oral Arg. at 13:22–14:4.

[71] *See id.* at 70:13–18 ("**[The Court:]** So is it your contention that dismissal of the action is the only appropriate remedy for Ms. Soares' failure to attend her deposition in August of 2022? **Mr. Bagby:** In all candor, Your Honor, of course not."); *id.* at 85:3–5 ("I think there are other less onerous sanctions or remedies that we can and should pursue and we will do that.").

[72] *Id.* at 86:4–9 ("You could order that the plaintiffs pay their only [sic] expenses. I think that would be a just outcome. Or we could continue to go ahead and pay their expenses, as previously agreed, to come to Uruguay and be deposed there."); *id.* at 87:5–8 ("If Your Honor thinks it's fair that the plaintiff reimburse us for those travel expenses, then so be it.").

[73] Super. Ct. Civ. R. 37(b)(2) and (d).

[74] *Drejka v. Hitchens Tire Serv. Inc.*, 15 A.3d 1221, 1222 (Del. 2010).

protective order, reasoning that a plaintiff who had filed suit in Delaware should appear in Delaware for a deposition at his own expense.[75] The Vice Chancellor also declined to grant the defendants' motion to compel the plaintiff to appear, writing that "defendants can re-notice his deposition" and that if he nevertheless failed to appear "solely for the reason that it is financially inconvenient for him to return to this jurisdiction to participate in the suit that he has brought, defendants can see [sic] the appropriate relief to have him dismissed from the suit as a plaintiff."[76]

This case, however, is readily distinguishable from the hypothetical contemplated in *DeCreney*. First, the court in *DeCreney* had already held that the plaintiff was required to appear in Delaware. Here, by contrast, neither party had sought court relief in their dispute over the August deposition.[77] Second, Plaintiff's counsel had informed Defendants not just that it was "financially inconvenient" for Plaintiff to travel but rather that it was legally impossible for Plaintiff to appear in Delaware on August 18, 2022. The Court declines to read *DeCreney* as a roadmap for defendants to obtain dismissal of a foreign plaintiff's case by noticing and holding a deposition that they know the plaintiff cannot attend.

Nonetheless, the Court agrees with Defendants that, as a general rule, a plaintiff who files suit in Delaware should expect to be deposed in Delaware and make reasonable arrangements to do so at his or her own expense.[78] However, Plaintiff's counsel represented at oral argument that they had consulted with Brazilian co-counsel about obtaining a passport and visa for Plaintiff "from at least

---

[75] 1975 WL 163504, at *2–3 (Del. Ch. Apr. 11, 1975).
[76] *Id.* at *3.
[77] *See Buckles v. Buccini Pollin Grp., Inc.*, 2013 WL 4521086, at *2 (Del. Super. July 17, 2013) ("Dismissal is not the appropriate or just sanction against Plaintiff at this time. The Court notes that no motion to compel Plaintiff to attend a deposition has previously been filed.").
[78] *See Re Barrett Estate*, 1994 WL 274004, at *1 (Del. Ch. June 1, 1994) (noting that "ordinarily a plaintiff may expect to be deposed at the place where the suit was filed"); *DeCreney*, 1975 WL 163504, at *2.

19

the date of these emails asking for a deposition if not before."[79]  Moreover, he explained that there was no place in Plaintiff's home town to apply for a passport, so she had to travel to do so, and that the administrative processes in Brazil were slowed by the COVID-19 pandemic.[80]  As of the date of oral argument, Plaintiff had obtained a passport but still did not have a U.S. visa, which Plaintiff's counsel explained is difficult to obtain for a person of limited means because of fear that the person might stay in the United States illegally.[81]

In sum, the parties were at an impasse.  On the one hand, it was (and currently remains) impossible for Plaintiff to travel to the United States.  On the other, Defendants were unwilling, consistent with current advice from the State Department, to conduct a deposition of Plaintiff in Brazil either in person or virtually.[82]  Ultimately, the Court need not decide the appropriate solution to this impasse, as the parties have already negotiated one.  Plaintiff and other witnesses travelled to Uruguay in early March, at Defendants' expense, and were deposed in person there.

Nevertheless, the Court agrees with Defendants that the correct course of action for Plaintiff to have taken in response to the noticed deposition in Delaware would have been to file a motion for a protective order pursuant to Superior Court Civil Rule 26(c).  Plaintiff's counsel admitted as much at oral argument, representing to the Court that he did not do so only because he did not believe that Defendants would go forward with the deposition after being informed that it was impossible for Plaintiff to attend.[83]

---

[79] Tr. at 98:1–12.
[80] *Id.* at 96:7–15.
[81] *Id.* at 96:16–97:2.
[82] *See* supra note 50.
[83] *See* Tr. of Oral Arg. at 89:14– 90:8.

20

Thus, the limited question before the Court is whether Plaintiff's failure to appear at the Delaware deposition, without seeking a protective order, merits a discovery sanction in this case. Since Plaintiff could not realistically have appeared in person, the question comes down to whether the failure to file a motion for a protective order merits a sanction under the circumstances. Under the plain meaning of the Court rules, and by Plaintiff's admission, a protective order is the proper remedy for a plaintiff who cannot or will not appear at a properly noticed deposition. However, based on the documentation provided to the Court, it was not unreasonable for Plaintiff's counsel to believe that Defendants would not actually move forward with the deposition.

While Rule 37(d) provides that failure to act is not excusable unless a motion for a protective order has been filed, it also provides that the Court "may make such orders in regard to the failure as are just." No order sanctioning Plaintiff would be just under the circumstances presented here, especially in light of the representations made regarding Plaintiff's efforts to obtain a visa and passport and the barriers to those efforts, as explained supra. The Court, in its discretion, declines to impose any

---

> **[The Court:]** [W]hy could you not have sought relief under Rule 26, and specifically a protective order, in this situation, which would have brought the matter before the Court, the Court could have dealt with it?
>
> **Mr. Martínez-Cid:** Your Honor, the answer is we could have and should have. . . . The only excuse . . . is my mistake in thinking that we were working through these issues. I did not think that deposition was going forward.

*Id.* at 91:8–16 ("We did not think -- we knew they knew that the deposition could not go forward on that date. We did not think that they were requiring a court order on the issue. But I apologize because certainly the way it stood, if there was no Notice of Cancellation filed, which there was not, we should have either followed up on that or we should have moved the Court for [a] Protective Order and I'm sorry."); *id.* at 105:14–21 ("[I]n retrospect and hindsight, we should have filed a motion for Protective Order at that time to not be here today. . . . But I believe that that would be an excusable mistake, based on the correspondence from the parties, that led us to believe that everyone knew that deposition was off.").

sanction, much less dismissal.[84]   Accordingly, Defendants' motion to dismiss pursuant to Rule 37(d) is **DENIED**.  However, while the Court concludes that no sanction is warranted, it indicated at oral argument that it would entertain a motion for extension of discovery deadlines as a possible means of redress for the late deposition of Plaintiff.  Defendants have filed such a motion, addressed below in Part IV.

## III.   Motion to Stay

Defendants' Motion to Stay is premised primarily on the pendency of the Common Law Marriage Action and Defendants' argument that the Court should wait for Brazilian courts to resolve the issue of who is entitled to recover noneconomic damages for Decedent's death.[85]   When there is a prior-pending or contemporaneously-filed competing action in another jurisdiction, the Court's analysis on a motion to stay is similar to the *forum non conveniens* analysis and requires weighing the *Cryo-Maid* factors.[86]   However, this analysis applies only when the actions are truly competing.  Plaintiff argues that these are not "competing" actions because no court in Brazil is adjudicating the negligence claims regarding

---

[84] The Court also agrees with Plaintiff that "agreements worked out in good faith between counsel should be honored." Tr. of 103:12–13.  Thus, the Court will not disturb the negotiated agreement regarding the Uruguay deposition after the fact by ordering Plaintiff to pay her own travel expenses.

[85] For the purpose of deciding this motion, the Court accepts Defendants' representation that "moral damages" under Brazilian law are, in the context of this action, the legal equivalent of "noneconomic damages" under Delaware law.  *See* Mot. to Stay at 4 ("On information and belief, under Brazilian law, 'moral damages' are the non-economic damages arising from the emotional harm caused by the decedent's death, the very same non-economic damages Josiane Soares seeks in this Delaware action.").

[86] *See BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *2, n.14 (Del. Super. Feb. 25, 2010).  The overwhelming hardship standard generally does not apply to a motion to stay.  *Id.* at *2 ("To justify a stay, the movant need only demonstrate that the preponderance of applicable forum factors 'tips in favor' of litigating the dispute in the non-Delaware forum." (quoting *Azurix Corp. v. Synagro Techs., Inc.*, 2000 WL 193117, at *5 (Del. Ch. Feb. 3, 2000))).

the cause of the plane crash.[87]  In their written motion, Defendants also cite several cases in which Delaware courts have stayed an action pending the resolution of a related action in another jurisdiction, emphasizing principles of comity and judicial efficiency.[88]

While the actions are not competing in a strict sense, a judgment from a Brazilian court that Plaintiff is not entitled to recover noneconomic damages under Brazilian law would potentially preclude recovery in the present action, since Plaintiff seeks only noneconomic damages here.   Thus, if it was still the case that the Common Law Marriage Action appeared on track to resolve the issue of Plaintiff's right to recover noneconomic damages under Brazilian law, then principles of comity and judicial efficiency might favor staying this action pending resolution of that case.  However, while not formally terminated, it appears that the Common Law Marriage Action in Brazil is no longer pending in any meaningful sense.  The Court will not grant an indefinite stay based on "concluded" litigation, pending a final judgment that may or may not arrive in the foreseeable future.[89] Accordingly, Defendants' motion to stay is **DENIED**.

---

[87] Tr. of Oral Arg. at 129:13–16 ("[T]hey are just not competing cases. No one is looking at Continental's engine, why it failed and why it was the legal cause of decedent's death except for this Court.").

[88] *See Yellow Pages Grp., LLC v. Ziplocal, LP*, 2015 WL 358279, at *4 (Del. Super. Jan. 27, 2015) (staying an indemnification action pending resolution of the underlying merits of the claim in separate litigation in Florida); *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 4516645, at *2 (Del. Ch. Oct. 8, 2008) (weighing the *Cryo-Maid* factors on a motion to stay and noting that "[t]he court should inform its analysis with considerations of comity and the necessities of an orderly and efficient administration of justice"); *Brudno v. Wise*, 2003 WL 1874750, at *5 (Del. Ch. Apr. 1, 2003) ("In view of these factors, I believe that the interests of litigative efficiency, judicial economy, and comity weigh heavily in favor of the entry of a stay *for the time being*.").

[89] Defendants' motion seeks a stay pending resolution of both the Common Law Marriage Action *and* the Labor Action.   However, Defendants have represented that the Labor Action was stayed pending resolution of the Common Law Marriage Action. It is unclear (1) whether the Labor Action has resumed in light of the recent developments in the Common Law Marriage Action and (2) whether Decedent's employer will continue to advance the argument that Plaintiff is not entitled to recover in light of Ms. Souza's failure to present any evidence to that effect in the

## IV. Motion for Extension of Trial and Discovery Deadlines

Defendants argue that new facts came to light during the depositions of Plaintiff and her children that require further discovery, and they request an extension of discovery and trial deadlines on that basis. Plaintiff responds that no information came to light during the depositions that Defendants would not have been aware of through an exercise of due diligence in evaluating the discovery already provided to them.

At the outset, the Court notes that a "trial judge has broad discretion to control scheduling and the court's docket."[90] A party may move to modify a scheduling order pursuant to Superior Court Civil Rule 16(b)(5)(a). While the text of the rule has been amended and no longer explicitly requires a showing of "good cause," Delaware courts have continued to require it,[91] and the Delaware Supreme Court recently affirmed that "[g]ood cause is the proper standard under Delaware law."[92] In evaluating good cause, "the court examines whether the moving party has been generally diligent, [whether] 'the need for more time was neither foreseeable nor its fault, and [whether] refusing to grant the continuance would create a substantial risk of unfairness to that party.'"[93]

---

Common Law Marriage Action. Because of this uncertainty, the Court will not grant a stay pending resolution of the Labor Action.

[90] *Phillips v. Wilks, Lukoff & Bracegirdle, LLC*, 2014 WL 4930693, at *4 (Del. Oct. 1, 2014), *as corrected* (Oct. 7, 2014) (quoting *Goode v. Bayhealth Medical Center, Inc.,* 931 A.2d 437, 2007 WL 2050761, at *3 (Del. July 18, 2007) (TABLE)).

[91] *See Hammer v. Howard Med., Inc.*, 2017 WL 1170795, at *1 (Del. Super. Feb. 14, 2017) ("To properly modify a scheduling order, the requesting party must file a motion for modification and, absent agreement of the other party, show good cause."); *Freibott v. Miller*, 2012 WL 6846562, at *1 n.6 (Del. Super. Oct. 26, 2012) ("[T]he good cause standard in this context derives from the previous version of Rule 16. The Rule now allows the trial judge to establish deadlines and protocols for each case, and trial judges continue to use the good cause standard.").

[92] *In re Asbestos Litig.*, 228 A.3d 676, 681 (Del. 2020).

[93] *Id.* at 682 (quoting *Moses v. Drake*, 109 A.3d 562, 566 (Del. 2015)).

The Court is satisfied that good cause exists under the unusual circumstances of this case. Defendants have been generally diligent in trying to obtain Plaintiff's deposition and initially requested dates for her deposition in January of 2022. As described previously, the parties were at an impasse over how that deposition should be conducted until an agreement was reached to conduct a deposition in Uruguay shortly before the close of discovery. Given the advice on the State Department website, the Court does not fault Defendants' counsel for being unwilling to participate in a deposition while Plaintiff was in Brazil, even if, as Plaintiff's counsel suggests, such depositions are generally tolerated in practice.[94]

As to a substantial risk of unfairness, the Court declines to resolve the factual disputes raised in the motion and response about what the parties disclosed, knew, or should have known and when. As a general matter, the Court is persuaded that it is reasonable for Defendants to request additional time to follow up on Plaintiff's long-sought deposition when an agreement to conduct that deposition was not reached until shortly before the close of discovery. Denying a modest request for extension would create a substantial risk of prejudice by denying Defendants time to conduct follow-up discovery based on the Uruguay depositions. Even if, for example, Defendants had access to contact information for Plaintiff's medical providers from previous interrogatories, it does not strike the Court as unreasonable that Defendants would choose to pursue that line of inquiry after first deposing Plaintiff herself directly. Accordingly, the motion for extension of discovery and

---

[94] *See* Tr. of Oral Arg. at 45:16–21 ("The issue of depositions in Brazil, I have taken and defended numerous depositions in Brazil with Cessna, with Bell Aircraft, Bell Helicopters, with many people. I can't recall a Continental deposition in Brazil as I sit here today, but I will tell you it is commonplace.").

trial deadlines is **GRANTED**.  The Court will schedule a conference via Zoom to set a new trial date and discovery deadlines.[95]

## CONCLUSION

For the foregoing reasons, Defendants' motions are resolved as follows: 1) the motion to dismiss on *forum non conveniens* grounds is **DENIED**; 2) the motion to dismiss under Superior Court Civil Rule 37(d) is **DENIED and no alternative sanctions will be imposed**; 3) the motion to stay is **DENIED**; and 4) the motion for extension of trial and discovery deadlines is **GRANTED**.  New discovery deadlines and a trial date will be determined in an office conference held via Zoom.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge


NEP:tls
*Via File & ServeXpress*
oc:    Prothonotary
cc:    Counsel of Record

---

[95] Defendants' motion requested a 60-day extension, but, particularly in light of the need to set a new trial date, the Court concludes that a scheduling conference is appropriate.